**COPPER PLUMBING & HEATING CO.,** a corporation et al., Appellants

v.

Joseph **CAMPBELL,** Comptroller General of the United States et al., Appellees.

No. 16044.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 27, 1961.

Decided April 20, 1961.

Mr. Franklin M. Schultz, Washington, D. C., with whom Messrs. C. Roger Nelson and Richard P. Williams, Washington, D. C., were on the brief for appellants.

Mr. David L. Rose, Atty., Dept. of Justice, Washington, D. C., with whom Asst. Atty. Gen. George Cochran Doub at the time the brief was filed, Messrs. Oliver Gasch, U. S. Atty., and John G. Laughlin, Jr., Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees. Mr. Morton Hollander, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellees.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

Appellant corporation, herein referred to as the Company, has been engaged largely in mechanical subcontracting on construction work, principally on government projects. The individual appellants are officers of the Company. On such a project the Company in 1957, in violation of the Eight Hour Laws,[1] failed to pay employees time and a half for overtime work. Investigation disclosed intentional underpayments. Appellants paid the United States $955 in penalties as required by its contract and by the statute, and also paid the employees $1,324.84, the amount due for the overtime work. Thereafter, on recommendation of the Department of the Army, the Department of Labor requested the Comptroller General to place appellants' names on the list of those barred from doing business with the United States, which was done. This has the effect, except as to existing contracts, of barring appellants from government work for three years from June 1, 1959, the date of publication of the list by the Comptroller General.

Appellants sued the Comptroller General, the Secretary of Labor and the Secretary of the Army for a judgment declaring unlawful the regulation [2] under which appellants were debarred, and for related relief. On cross motions for summary judgment, there being no genuine issue of material fact the District Court, holding that appellants lacked standing and, also, that the debarment was authorized, dismissed the complaint.

■ We think appellants had standing. The listing with its consequence was specifically directed against them. It constituted a limitation, due to appellants' conduct, upon their opportunity for three years to work on government projects, which at the time of the listing constituted approximately seventy per cent of the Company's business. This was a sanction in addition to the penalties imposed by the statute. Appellants could hardly be said to lack standing to litigate the validity of the fines. We see no significant difference on the question of standing.

The case is unlike Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108. There the plaintiff sought to contest the validity of conditions of general application for the securing of government supplies. The conditions applied not only to plaintiffs but "to all other manufacturers in this entire nation-wide industry." 310 U.S. at page 117, 60 S.Ct. at page 872. Appellants are prohibited from competing on an equal basis with others in the same industry, whereas in Lukens Steel Co. plaintiffs could not show "an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law." 310 U.S. at page 125, 60 S.Ct. at page 876.

■ While they do not have a right to contract with the United States on

---

1. 37 Stat. 137 (1912), as amended, 40 U.S.C. §§ 324–326 (1958), 40 U.S.C.A. §§ 324–326.

2. 29 C.F.R. § 5.6(b) (Supp.1961).

their own terms, appellants do have a right not to be invalidly denied equal opportunity under applicable law to seek contracts on government projects. If deprived of this right they suffer a "legal wrong" which gives them access to the courts under section 10 of the Administrative Procedure Act.[3] Cf. George v. Mitchell, 108 U.S.App.D.C. 324, 282 F.2d 486.

As to the merits, appellees rely upon the Reorganization Act of 1949,[4] Reorganization Plan No. 14 of 1950[5] adopted thereunder, and departmental regulations. The Reorganization Act provides that when the President finds that,

"(1) the transfer of the whole or any part of any agency, or of the whole or any part of the functions thereof, to the jurisdiction and control of any other agency;

\* \* \* \* \* \*

is necessary to accomplish one or more of the purposes of section 133z (a) of this title, he shall prepare a reorganization plan for the making of the reorganizations as to which he has made findings \* \* \*.[6]"

Under this authority the President submitted to Congress Reorganization Plan No. 14 of 1950, which duly became effective under the provisions of the Reorganization Act.[7] The plan reads as follows:

"Labor Standards Enforcement

"In order to assure coordination of administration and consistency of enforcement of the labor standards provisions of each of the following Acts by the Federal agencies responsible for the administration thereof, the Secretary of Labor shall prescribe appropriate standards, regulations, and procedures, which shall be observed by these agencies, and cause to be made by the Department of Labor such investigations, with respect to compliance with and enforcement of such labor standards, as he deems desirable, namely: \* \* \* (d) the Act of June 19, 1912 (37 Stat. 137, ch. 174), as amended \* \*. [The Act violated by appellants.]"

Thereafter the Secretary of Labor issued regulations to carry out the reorganization. The regulations provide, *inter alia*, that whenever a contractor or subcontractor is found by the Secretary or Agency Head to be in aggravated or wilful violation of the overtime pay provisions of certain acts relating to federally financed and assisted construction, other than the Davis-Bacon Act, such contractor or subcontractor, or any firm, corporation, partnership, or association in which it has a substantial interest "shall be ineligible for a period of three years (from the date of publication by the Comptroller General of the name or names of said contractor or subcontractor on the ineligible list as provided below) to receive any contracts subject to any of the statutes listed in § 5.1,"[8] which include the Eight Hour Laws. In cases arising under the Davis-Bacon Act the regulation provides that the ineligibility provision described in that Act shall govern. Appellants concededly, in the present posture of the case, were in wilful and aggravated violation of their contractual and statutory obligations under the Eight Hour Laws.

The question of authority is not easily resolved. On the one hand we are obligated to defer, to a reasonable degree, to the Secretary's interpretation of his authority in administering and enforcing these labor acts. Commissioner

3. § 10, 60 Stat. 243 (1946), 5 U.S.C. § 1009 (1958), 5 U.S.C.A. § 1009.

4. 63 Stat. 203 (1949), 5 U.S.C. §§ 133z to 133z–15 (1958), 5 U.S.C.A. §§ 133z to 133z–15.

5. 5 U.S.C.A. following section 133z–15, 15 Fed.Reg. 3176 (1950).

6. § 3, 63 Stat. 203 (1949), 5 U.S.C. § 133z–1 (1958), 5 U.S.C.A. § 133z–1.

7. § 6, 63 Stat. 205 (1949), 5 U.S.C. § 133z–4 (1958), 5 U.S.C.A. § 133z–4.

8. 29 C.F.R. § 5.6(b) (Supp.1961). The acts to which the debarment provision is applicable are set out in 29 C.F.R. § 5.1 (Supp.1961).

of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831. On the other hand the law admonishes us to give strict construction to "penal" statutes, which leads us to consider whether the three-year debarment is penal. As to this, following the reasoning of Steuart & Bro. v. Bowles, 322 U.S. 398, 64 S.Ct. 1097, 88 L.Ed. 1350, we conclude that it is not, but is a regulation for effectuating compliance, and furthering the public policy represented by the labor acts. In Steuart & Bro. penalties both civil and criminal were provided by Congress for violation of wartime regulations allocating and rationing materials. The administrative agency by regulation added suspension orders for violation of the regulations. The Court said,

"We agree that it is for Congress to prescribe the penalties for the laws which it writes. It would transcend both the judicial and the administrative function to make additions to those which Congress has placed behind a statute. United States v. Two Hundred Barrels of Whiskey, 95 U.S. 571 [24 L.Ed. 491]; Campbell v. Galeno Chemical Co., 281 U.S. 599 [50 S.Ct. 412, 74 L.Ed. 1063]; Wallace v. Cutten, supra [298 U.S. 229, 56 S.Ct. 753, 80 L.Ed. 1157]. Hence we would have no difficulty in agreeing with petitioner's contention if the issue were whether a suspension order could be used as a means of punishment of an offender. But that statement of the question is a distortion of the issue presented on this record.[9] "

In upholding the suspension orders the Court reasoned that the test was whether suspension was relevant or germane to allocation or efficient distribution of the materials, or, on the contrary, was designed to punish. Applying this test to the present case the question would appear to be whether temporary debarment is relevant to the maintenance of responsible bidding under and compliance with the labor acts.[10] If the regulation is designed to implement congressional purposes it does not become a penalty merely because it adversely affects some parties. We appreciate that the withholding of government business for three years may be a very serious blow to an enterprise specializing in such business. Nevertheless, we think the test stated by the Supreme Court in Steuart & Bro. is satisfied in this case. Congress has explicitly used debarment for a period of time in implementing some labor acts, and so have contracting agencies.[11] Though the Eight Hour Laws provide for civil and criminal penalties the teaching of Steuart & Bro. is that this does not negative the authority of an enforcement agency to use debarment as an additional means for accomplishing the congressional purpose. See, also, Black v. Magnolia Liquor Co., 355 U.S. 24, 78 S.Ct. 106, 2 L.Ed. 2d 5. In the instant case, moreover, the debarment is not absolute. Appellants petitioned the Secretary for removal from the Comptroller General's list, and upon a proper showing it appears relief would have been granted. It was not granted because the Department of Labor, after a hearing, could not conclude that appellants "can be relied upon by the United States and Federal Agencies as responsible persons who will comply with" the required standards.

Though not a penalty, authority for the debarment must still be found. One

9. 322 U.S. at page 404, 64 S.Ct. at page 1100.

10. The emergency wartime character of the program involved in Steuart & Bro. was not at the basis of the criteria set forth for determining whether or not the suspension orders were penal.

11. Davis-Bacon Act, 46 Stat. 1494 (1931), as amended, 40 U.S.C. § 276a–2(a) (1958), 40 U.S.C.A. § 276a–2(a); Walsh-Healey Public Contracts Act, § 3, 49 Stat. 2037 (1936), 41 U.S.C. § 37 (1958), 41 U.S.C.A. § 37; Buy American Act, § 3(b), 47 Stat. 1521 (1936), 41 U.S.C. § 10b(b) (1958), 41 U.S.C.A. § 10b.

way to ascertain whether it exists is to consider whether the contracting agency itself could have included such a provision in its regulations. If so then the Secretary of Labor, acting under the reorganization, clearly could do so. We think the agency, in this instance the Department of the Army, could have included such a regulatory provision in asking for bids and in awarding contracts. It would be a means for securing compliance with the wage and hour standards and a means of obtaining responsible bidding. Cf. Schlesinger v. Gates, 101 U.S.App.D.C. 355, 249 F.2d 111.

■■ Of course the regulation must meet the test of reasonableness. But this test seems well met when it is recalled that Congress itself has authorized such a bar in several statutes. Note 11 supra. Appellants suggest the inference that such explicit inclusion in some statutes precludes such a sanction when not explicitly included. But this does not follow. Since debarment is an enforcement measure utilized in kindred statutes, Congress' authorization in Plan No. 14 that the Secretary assure "coordination of administration and consistency of enforcement of the labor standards provisions" of the acts specified in the Plan, and to that end to "prescribe appropriate standards, regulations, and procedures," would seem to permit the Secretary to prescribe a standard or regulation which the contracting agency could prescribe, especially one of the character Congress has approved in kindred statutes.

Appellants refer to the views expressed by the Comptroller General in a letter to the Secretary. The Comptroller General followed the recommendation of the Secretary in the instant listing, but in the letter expressed the opinion that the debarment regulation offended section 5(a) (4) of the Reorganization Act.[12] He reasoned that since this section of the Act precludes a plan which authorizes "any agency to exercise any

function which is not expressly authorized by law at the time the plan is transmitted to the Congress," the debarment condition, which had not been adopted by the contracting agency, was unauthorized. But the debarment regulation does not enlarge functions theretofore residing in the agencies. Those functions, insofar as material, included the power to enter into contracts in accordance with relevant statutes. This included the authority by regulation to prescribe appropriate standards for securing compliance with the labor provisions, and this in turn, as we believe, included authority to include the debarment provision. The transfer to the Secretary was a transfer and coordination of authority already reposing within the several agencies.

Affirmed.

---

12. 63 Stat. 205 (1949), 5 U.S.C. § 133z–3(a) (4) (1958), 5 U.S.C.A. § 133z–3(a) (4).