Carmen GONZALEZ et al., Appellants,

v.

Orville L. FREEMAN et al., Appellees.

No. 17765.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 20, 1963.

Decided May 7, 1964.

Mr. Alan H. Kaplan, Washington, D. C., with whom Messrs. Sheldon E. Bernstein and Paul H. Mannes, Washington, D. C., were on the brief, for appellants.

Mr. Gerald A. Messerman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellees.

Before DANAHER, BURGER and McGOWAN, Circuit Judges.

BURGER, Circuit Judge.

This is an appeal from an order granting summary judgment for appellees in an action for a declaratory judgment and injunctive relief against the Secretary of

Agriculture and others relating to debarment of appellants from participating in certain contracts with Commodity Credit Corporation (Commodity Credit),[1] one of the appellees.

In January 1960, Thos. P. Gonzalez Corporation, which had a record of contractual relations with Commodity Credit for a number of years, received notice by telegram[2] that the Gonzalez Corporation and its officers and affiliates, including Thomas P. Gonzalez and Carmen Gonzalez, Gonzalez and Blanco, J. F. Gonzalez Company, the American Chili Powder Company, and any corporation in which Thomas or Carmen Gonzalez was a partner or officer, were temporarily debarred from doing business with Commodity Credit pending investigation into possible misuse of official inspection certificates relating to commodities exported to Brazil by Gonzalez Corporation. Only Carmen Gonzalez, Thomas P. Gonzalez and Thos. P. Gonzalez Corporation joined as plaintiffs in the District Court action now under review.

By letter dated October 31, 1960 Commodity Credit advised appellants that the suspension would be continued until conclusion of an investigation by the Department of Justice. On May 24, 1961, Thomas P. Gonzalez, individually, was indicted on felony charges for alleged misuse of the official inspection certificates referred to in the January 1960 notice of temporary suspension. Following the receipt of the telegram announcing temporary suspension appellants presented information relevant to their position and various representations were made in their behalf by counsel to officials of appellees. On May 24, 1962, after consideration of information and arguments submitted by appellants, Commodity Credit informed appellants by letter that they were suspended for five years from the date of the original temporary suspension on January 13, 1960. The letter stated no reasons or grounds for the final debarment action.[3]

Meanwhile, on January 15, 1962, the indictment of May 24, 1961, charging Thomas P. Gonzalez personally with misuse of official inspection certificates, was dismissed, and Gonzalez entered a plea of guilty to a misdemeanor based essentially on the same acts. 60 STAT. 1087 (1946), as amended, 69 STAT. 553 (1955), 7 U.S.C. § 1622(h) (1958).

Appellants sought review by the Secretary of Agriculture, who declined to re-

1. The Commodity Credit Corporation is a corporate instrumentality established by Congress under the Secretary of Agriculture "[f]or the purpose of stabilizing, supporting, and protecting farm income and prices, of assisting in the maintenance of balanced and adequate supplies * * *, and of facilitating the orderly distribution of agricultural commodities * * *." 62 STAT. 1070 (1948), as amended, 15 U.S.C. § 714 (1958). As an instrument of government it performs no private but only governmental functions; for our purposes its stands in the same position as an executive agency.

2. "This is to notify you that effective immediately the Thomas P. Gonzalez Corporation, its officers and affiliates, are suspended from participating in any programs of the Commodity Credit Corporation pending completion of an investigation regarding misuse of certificates issued by Commodity Credit Corporation for approximately 17,700 hundredweight of beans sold to Thomas P. Gonzalez Corporation for export. The certificates which indicated the beans had been cleaned and were fit for human consumption were used by Thomas P. Gonzalez Corporation in connection with a like quantity of beans of questionable quality which were sold to Ansae Corporation * * * [and] were exported to Brazil. * * *"

3. The debarment letter stated, inter alia: "Thos. P. Gonzalez Corporation, its officers, Thomas P. Gonzalez and Carmen Gonzalez, and any firms in which Thomas P. Gonzalez and Carmen Gonzalez may be a partner or officer * * * have been debarred from participating in any programs financed by Commodity Credit Corporation for a period of five years. * * * effective as of January 13, 1960, the date on which the above-named firms were suspended from participating in any programs of Commodity Credit Corporation." See note 4, infra.

consider, stating: "We feel that further discussions would serve no useful purpose unless you are in a position to present new facts concerning this matter which heretofore have not been considered." Appellants offered none.

Thereafter, appellants instituted the declaratory judgment action from which this appeal arises. Since January 1960, appellants have been ineligible to participate in any programs of Commodity Credit or to purchase surplus government commodities for resale. Their complaint in the District Court alleged that in appellants' course of dealings with Commodity Credit they had purchased for export under license an aggregate of more than $7,000,000 in surplus commodities, that this was a large part of their business, and that loss of this business has deprived them of more than $100,000 in profits. The chronology of this record shows that for more than two and one-half years, while under temporary and then final suspension, appellants have protested unsuccessfully against the action which made them ineligible to purchase surplus government commodities under control of Commodity Credit.

Appellants contend that the debarment is invalid for four reasons:

1. Debarment is not authorized by statute or by regulation.

2. Debarment was imposed without rules or regulations specifying grounds for debarment and establishing a procedure for debarment.

3. Debarment was imposed without notice of charges relied upon and without a meaningful opportunity to meet and refute charges.

4. Debarment of appellants was a denial of due process.

Appellants seem to concede that if the action of debarment is authorized by law, a preliminary or temporary debarment may be made in summary fashion. They contend, however, that final action of debarment imposes such serious economic injury on a contractor that debarment can be imposed only by a procedure which comports with constitutional standards of due process. The temporary suspension of January 1960 was to continue only "pending completion of an investigation" by the Department of Justice. At that point—when this investigation was completed—appellants insist, notice of charges, opportunity to be heard, and opportunity to cross-examine adverse witnesses were required.

Appellees' position is that (1) doing business with Commodity Credit is not a legally protected right and suspension of eligibility for five years gives rise to no justiciable controversy; (2) Congress has expressly precluded judicial review of Commodity Credit action; (3) appellants committed a willful act in violation of law basically destructive of the purposes and operations of Commodity Credit;[4] (4) appellant Gonzalez' guilty plea to fraudulent misuse of official inspection certificates established the truth of criminal misuse of such certificates and made it unnecessary to conduct hearings to ascertain the facts on which suspension and debarment rested; (5) opportunity was afforded appellants to present evidence and arguments; (6) the sanction imposed was plainly related to the successful execution of Commodity Credit's statutory objectives and reasonably commensurate with the gravity of appellants' misconduct.

The issues which emerge from the opposing contentions can be restated as follows:

(1) Does debarment of a government contractor from eligibility for

---

**4.** In the District Court, for the first time so far as this record discloses, appellees alluded directly to the grounds for debarment stating: "in the opinion of our Agricultural Attache in Brazil, the shipment of these beans [by Gonzalez Corporation] to Brazil under cover of misused CCC sanitary certificates has 'caused great damage to the prestige of United States agricultural trade' and lingers 'as an adverse trade factor in relations' between the United States and Brazil." Appellants allege that had opportunity been afforded they could have disproved this claim and shown affirmatively absence of fault on their part.

purchase of surplus commodities give rise to a justiciable controversy if it is alleged that debarment was imposed without due process?

(2) Did Congress provide for judicial review of the debarment process conducted by Commodity Credit?

(3) May debarment of a government contractor be imposed without express statutory authority?

(4) If Commodity Credit has legal authority to debar, can appellants be debarred:

(a) in the absence of regulations establishing standards and procedures, and

(b) in the absence of written notice of charges, evidentiary hearing and findings on charges of misconduct?

### (1)
#### Justiciability and Standing

There can be no doubt that the invasion of some legally protected right is the predicate upon which any exercise of judicial power must rest. See Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 140–141, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (principal opinion). It is equally correct, broadly speaking, to say that no citizen has a "right," in the sense of a legal right, to do business with the government. See Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). But use of such terms as "right" or "privilege" tends to confuse the issues presented by debarment action. Interruption of an existing relationship between the government and a contractor places the latter in a different posture from one initially seeking government contracts and can carry with it grave economic consequences.

■ The consequences of administrative termination of all right to bid or contract, colloquially called "blacklisting" and formally called suspension or debarment, will vary, depending upon multiple factors: the size and prominence of the contractor; the ratio of his government business to non-government business; the length of his contractual relationship with government; his dependence on that business; his ability to secure other business as a substitute for government business. These are some of the basic factors involved. The impact of debarment on a contractor may be a sudden contraction of bank credit, adverse impact on market price of shares of listed stock, if any, and critical uneasiness of creditors generally, to say nothing of "loss of face" in the business community.[5] These consequences are in addition to the loss of specific profits from the business denied as a result of debarment. We need not resort to a colorful term such as "stigma" to characterize the consequences of such governmental action, for labels may blur the issues. But we strain no concept of judicial notice to acknowledge these basic facts of economic life.

■■ Thus to say that there is no "right" to government contracts does not resolve the question of justiciability. Of course there is no such right; but that cannot mean that the government can act arbitrarily, either substantively or procedurally, against a person or that such person is not entitled to challenge the processes and the evidence before he is officially declared ineligible for government contracts. An allegation of facts which reveal an absence of legal author-

5. See generally, ATTORNEY GENERAL'S COMMITTEE ON ADMINISTRATIVE PROCEDURE, DIVISION OF PUBLIC CONTRACTS 4 (monograph 1939); Gantt and Panzer, *The Government Blacklist: Debarment and Suspension of Bidders on Government Contracts*, 25 G.W.L.REV. 175, 176 (1956). "A conclusion reached by the Attorney General's Committee on Administrative Procedure in 1939 (mimeographed monograph), that 'the penalty of black-listing is so severe that its imposition may destroy a going business,' appears to be even more valid under present day conditions. As such, the power of debarment is tantamount to one of life or death over a business * * *." Comp.Gen.Dec. B–139720 (Jan. 6, 1960) (Unpublished letter from Comp.Gen. to Sec'y of Labor), reproduced in COMMITTEE ON ADJUDICATION OF CLAIMS REPORT, *op. cit. infra* note 11 at App.E.

ity or basic fairness in the method of imposing debarment presents a justiciable controversy in our view. The injury to appellants alleged in their complaint gives them standing to challenge the debarment processes by which such injury was imposed. See Copper Plumbing & Heating Co. v. Campbell, 110 U.S.App. D.C. 177, 179–180, 290 F.2d 368, 370–371 (1961).

(2)

*Judicial Review*

The next question to be resolved is whether Congress has provided for judicial review of Commodity Credit action imposing debarment of a contractor. Section 10 of the Administrative Procedure Act, 60 STAT. 243 (1946), 5 U.S.C. § 1009 (1958), under the title of "Judicial review of agency action," after carving out two areas of exception where no review is available, defines the right of review, the form of proceedings, the acts reviewable and the scope of review. The introductory sentence of Section 10 withholds from judicial scrutiny cases where "(1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion"; neither exception is applicable here. Appellees contend that the challenged agency action here falls within both of these categories under 63 STAT. 1057 (1949), 7 U.S.C. § 1429 (1958):

> "Determinations made by the Secretary [of Agriculture] under this Act shall be final and conclusive: *Provided*, That the scope and nature of such determinations *shall not be inconsistent* [emphasis added] with the provisions of the Commodity Credit Corporation Charter Act. * * *"

Action challenged as a denial of due process—whether substantive in the sense of being arbitrary or by capricious classification, or procedural in the sense of denying minimum safeguards—could be immune from judicial review, if ever, only by the plainest manifestation of congressional intent to that effect. See American and European Agencies v. Gil-lilland, Inc., 101 U.S.App.D.C. 104, 106 at n. 4, 247 F.2d 95, 97 at n. 4, *cert. denied*, 355 U.S. 884, 78 S.Ct. 152, 2 L. Ed.2d 114 (1957); see generally, Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts*, 66 HARV.L. REV. 1362, 1386–1401 (1953). We find no such intent reflected in the statute. To the contrary, Congress must have contemplated that a claim of "inconsistency" in the Secretary's action was to be resolved by judicial review. In short, far from precluding judicial review this statute authorizes it, and "the responsibility of determining the limits of statutory grants of authority in such instances is a judicial function entrusted to the courts by Congress * * *." Stark v. Wickard, 321 U.S. 288, 310, 64 S.Ct. 559, 571, 88 L.Ed. 733 (1944).

The determination to debar a contractor does not fall within the scope of the second exception, "agency action * * * by law committed to agency discretion." The language, relied upon by appellees, relating to "final and conclusive" determinations of the Secretary has as its primary thrust the removal from judicial scrutiny of the operational policy decisions and programs of the agency, not standards of procedure for debarment. Compare Pauling v. McNamara, 118 U.S. App.D.C. ——, 331 F.2d 796 (1963), *pet. for cert. filed*, 32 U.S. L. WEEK 3352 (U. S. April 2, 1964) (No. 965). Appellants here do not challenge broad policy decisions, as in the *Lukens Steel* and *Pauling* cases, *supra*, but narrowly attack as beyond agency authority a debarment or "blacklisting" which the complaint alleges inflicted a special injury on appellants and was accomplished in a procedurally unfair and unauthorized manner. Nothing in the statute confers unreviewable finality on determinations of the Secretary as to questions of the scope of his congressional authority or of the requisite procedural safeguards. *Cf.* Harmon v. Brucker, 355 U.S. 579, 582, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) (per curiam).

The invasion of a legally protected right also constitutes a legal

wrong [6] under the meaning of "legal wrong" as used in Section 10(a) of the Administrative Procedure Act.[7] We have already demonstrated that appellants have a right not to be debarred except in an authorized and procedurally fair manner;[8] appellants' allegations of the means by which debarment was imposed in this case set forth a claim of invasion of that right and give them standing under Section 10(a). See Copper Plumbing & Heating Co. v. Campbell, *supra*. We read Section 10(b) of the Administrative Procedure Act, 60 STAT. 243 (1946), 5 U.S.C. § 1009(b) (1958), as providing that whenever judicial review is not "specified by statute" or is inadequate "any applicable form of legal action (including actions for declaratory judgments or writs of * * * injunction * * *)" may be brought "in any court of competent jurisdiction."

This specifically authorizes the type of action brought by appellants in the District Court. Finally, although this is not agency action for which Congress has specifically provided judicial review, debarment here is "final agency action for which there is no other adequate remedy in any court * * *" under Section 10(c).[9] Section 10(c) thus contemplates judicial review under the terms of Section 10(e).[10]

### (3)

#### Authority For Debarment

██ Congress has made no explicit provision for debarring contractors doing business with Commodity Credit. The question presented is whether Commodity Credit is powerless to terminate business relations with irresponsible, defaulting or dishonest contractors.[11] Not-

6. See Copper Plumbing & Heating Co. v. Campbell, 110 U.S.App.D.C. 177, 179–180, 290 F.2d 368, 370–371 (1961); Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 281, 225 F. 2d 924, 932, *cert. denied,* 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780 (1955).

7. 60 STAT. 243 (1946), 5 U.S.C. § 1009 (a) (1958) states:
"(a) Right of review.
"Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof."

8. See discussion under Point 1.

9. Section 10(c), 60 STAT. 243 (1946), 5 U.S.C. § 1009(c) (1958), provides in part: "Acts reviewable. Every agency action made reviewable by statute *and* every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review." (Emphasis added.)

10. Section 10(e), 60 STAT. 243 (1946), 5 U.S.C. § 1009(e) (1958), provides:
"Scope of review. So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld

or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error. * * *"

11. Compare Buy-American Act, § 3(b), 47 STAT. 1520 (1933), 41 U.S.C. § 10b(b) (1958); Davis-Bacon Act, § 3(a), 49 STAT. 1011 (1935), 40 U.S.C. § 276a–2 (a) (1958); Walsh-Healy Public Contracts Act, § 3, 49 STAT. 2037 (1936), 41 U.S.C. § 37 (1958).
Debarment has long been the subject of discussion. See generally, FINAL REPORT, ADMINISTRATIVE CONFERENCE OF THE UNITED STATES, Dec. 15, 1962, p. 15; COMMITTEE ON ADJUDICATION OF CLAIMS REPORT ON DEBARMENT AND

withstanding its severe impact upon a contractor, debarment is not intended to punish but is a necessary "means for accomplishing the congressional purpose"[12] of Commodity Credit to "aid in the development of foreign markets for, agricultural commodities." 62 STAT. 1072 (1948), 15 U.S.C. § 714c(f) (1958). Without such power to deal with irresponsible bidders and contractors, the efficiency of Commodity Credit's operations would be severely impaired. See L. P. Steuart & Bro., Inc. v. Bowles, 322 U.S. 398, 406, 64 S.Ct. 1097, 88 L.Ed. 1350 (1944). We conclude that such a power is inherent and necessarily incidental to the effective administration of the statutory scheme.[13] Cf. Commodity Credit Corp. v. Worthington, 263 F.2d 178 (4th Cir.), cert. denied, 359 U.S. 1012, 79 S.Ct. 1148, 3 L.Ed.2d 1036 (1959). But to the debarment power

there attaches an obligation to deal with uniform minimum fairness as to all. Cf. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

(4)

*Debarment Procedures*

No regulations have been established by appellees authorizing or governing debarment for misuse of official inspection certificates relating to the commodities exported by appellants to Brazil.[14]

Section 3(a) of the Administrative Procedure Act provides:

"(a) Every agency shall separately state and currently publish in the Federal Register * * * (2) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all

---

SUSPENSION OF PERSONS FROM GOVERNMENT CONTRACTING AND FEDERALLY ASSISTED CONSTRUCTION WORK, October 1, 1962; Gantt and Panzer, *op. cit. supra* note 5; Miller, *Administrative Discretion in the Award of Federal Contracts*, 53 MICH.L.REV. 781, 795–812 (1955); ATTORNEY GENERAL'S COMMITTEE ON ADMINISTRATIVE PROCEDURE, *op. cit. supra* note 5; Note, *Notice and Hearing in Government Exclusionary Action*, 110 U.PA. L.REV. 1009 (1962); Note, *The Blacklisted Contractor—Standing to Sue*, 56 N. W.L.REV. 811 (1962).

12. Copper Plumbing & Heating Co. v. Campbell, 110 U.S.App.D.C. 177, 181, 290 F.2d 368, 372 (1961).

13. The following statutory provisions contribute to this conclusion. Commodity Credit is empowered to "enter into and carry out such contracts or agreements as are necessary in the conduct of its business", 62 STAT. 1070 (1948), 15 U. S.C. § 714b(g) (1958), and "[s]hall have such powers as may be necessary or appropriate for the exercise of the powers specifically vested in the Corporation, and all such incidental powers as are customary in corporations generally * * *." 62 STAT. 1070 (1948), 15 U. S.C. § 714b(m) (1958). Commodity Credit is also empowered to "[r]emove and dispose of or aid in the removal or disposition of surplus, agricultural commodities." 62 STAT. 1072 (1948), 15 U. S.C. § 714c(d) (1958). "In the Corpora-

tion's * * * selling operations with respect to agricultural commodities * * *, the Corporation shall, to the maximum extent practicable consistent with the fulfillment of the Corporation's purposes and the effective and efficient conduct of its business, utilize the usual and customary channels, facilities, and arrangements of trade and commerce." 62 STAT. 1072 (1948), 15 U.S.C. § 714c (g) (1958).

14. Congress has empowered Commodity Credit to "adopt, amend, and repeal bylaws, rules, and regulations governing the manner in which its business may be conducted and the powers vested in it may be exercised." 62 STAT. 1070 (1948), 15 U.S.C. § 714b(d) (1958). Moreover, we note that the Secretary of Agriculture has seen fit to exercise his statutory power to promulgate regulations deemed necessary under the Distribution and Marketing of Agricultural Products Act, 60 STAT. 1090, (1946), as amended, 7 U.S.C. § 1624(b) (1958), and has issued regulations specifically providing for debarment for fraudulent or deceptive acts in connection with official inspection certificates on certain specified commodities, but only after "notice and opportunity for hearing has been accorded * * *." 7 C. F.R. § 55.30(a) (1) (iii) (1957) (egg products); 7 C.F.R. § 58.53(a) (1) (iii) (1957) (dairy products); 7 C.F.R. §§ 54.45(a), 54.46(c) (Supp.1963) (rabbits and products thereof).

578

formal or informal procedures available as well as forms and instructions as to the scope and contents of all papers, reports, or examinations; and (3) substantive rules adopted as authorized by law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law. No person shall in any manner be required to resort to organization or procedure not so published.

"(b) Every agency shall publish or, in accordance with published rule, make available to public inspection all final opinions or orders in the adjudication of cases (except those required for good cause to be held confidential and not cited as precedents) and all rules."

60 STAT. 238 (1946), 5 U.S.C. § 1002(a), (b) (1958).

■■■■■ The command of the Administrative Procedure Act is not a mere formality. Those who are called upon by the government for a countless variety of goods and services are entitled to have notice of the standards and procedures which regulate these relationships. Neither appellants nor others similarly situated can turn to any official source for guidance as to what acts will precipitate a complaint of misconduct, how charges will be made, met or refuted, and what consequences will flow from misconduct if found. In the contractual relationship shown by this record an experienced businessman could reasonably anticipate that some agency action might well be taken as a result of misuse of inspection certificates, but he could only speculate as to the nature of the action and the processes by which it would be effected. This condition does not accord with the provisions of the Administrative Procedure Act.[15] On this record there is neither the appearance nor the reality of fairness in the process by which debarment of appellants was accomplished. Disqualification from bidding or contracting for five years directs the power and prestige of government at a particular person and, as we have shown, may have a serious economic impact on that person. Such debarment cannot be left to administrative improvisation on a case-by-case basis. The governmental power must be exercised in accordance with accepted basic legal norms.[16] Considerations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based upon the record so made.[17] See notes 20 and 21, infra.

15. *Cf.* Hotch v. United States, 208 F.2d 244, 249, 250, 14 Alaska 574 (9th Cir. 1953) (on petition for rehearing); *id.,* 212 F.2d 280, 282–283, 14 Alaska 594 (9th Cir. 1954); Columbia Research Corp. v. Schaffer, 256 F.2d 677, 680 (2d Cir. 1958), *vacated on rehearing for failure to file timely motion to substitute defendant,* 256 F.2d 680–681 (2d Cir. 1958) (per curiam); Vibra Brush Corp. v. Schaffer, 256 F.2d 681, 682 (2d Cir. 1958), *vacated on rehearing for failure to file timely motion to substitute defendant,* 256 F.2d 682–684 (2d Cir. 1958); Pinkus v. Reilly, 157 F.Supp. 548, 551–552 (D.N.J.1957). See also United States v. Aarons, 310 F.2d 341, 345–348 (2d Cir. 1962) (criticizing the Hotch case but only on its holding as to actual notice).

16. In Schlesinger v. Gates, 101 U.S.App. D.C. 355, 249 F.2d 111 (1957) (per curiam), *cert. denied,* 355 U.S. 939, 78 S.Ct. 428, 2 L.Ed.2d 421 (1958), this court found debarment specifically authorized by statute which was implemented by regulations. The regulations involved in *Schlesinger* provided specifically for notice and opportunity to present evidence, and the court found "substantial compliance with this requirement."

17. Although the record of proceedings of the plea and sentencing of Thomas Gonzalez is not before us, his guilty plea is cogent evidence tending to support his

On the record before us we see that the preliminary notice of temporary suspension alluded to an alleged misuse of inspection certificates and to a proposed investigation into the subject, but the final notice of five year debarment was silent as to reasons for the action taken [18] and was sent only to Thomas P. Gonzalez, Thos. P. Gonzalez Corporation and their attorneys. At no time was there any detailed specification of charges so far as the record shows, although the details may well have been discussed in conferences. No hearing was held, no evidence recorded, no findings were made. At no point were appellants in a position to cross-examine officials who proffered or supported the allegations which presumably led to debarment.

█ Having looked "first to petitioners' nonconstitutional claim that respondent acted in excess of powers granted * * * by Congress," Harmon v. Brucker, 355 U.S. 579, 581, 78 S.Ct. 435 (1958), we conclude that although the Act vests Commodity Credit with power to impose debarment for misuse of official inspection certificates, we cannot agree that Congress intended to authorize such consequences without regulations establishing standards and procedures and without notice of changes, hearings, and findings pursuant thereto. Absent such procedural regulations and absent notice, hearing and findings in this case, the debarment is invalid; to reach any other conclusion would give rise to serious constitutional issues. See,

e. g., Greene v. McElroy, 360 U.S. 474, 507–508, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Bland v. Connally, 110 U.S.App. D.C. 375, 293 F.2d 852 (1961); Davis v. Stahr, 110 U.S.App.D.C. 383, 293 F. 2d 860 (1961). Conceivably a summary debarment, in the nature of a temporary suspension, might be warranted for a reasonable period pending investigation; [19] whether it would be warranted absent statutory authority or valid regulations, we need not decide. What seems clear is that since the summary final action here was not authorized by statute or governed by regulation, the challenged debarment action could not lawfully be taken without safeguards which satisfy the demands of fairness.

█ The cases in this general area culminating in Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), make clear that the procedures due one person in one situation are not mechanically the same as those due another in a different context. The governmental interests on the one hand and the individual interests on the other must be balanced and the procedures established must be considered in light of various questions which courts have postulated from time to time: How was the individual likely to be hurt? What governmental interest was to be protected? How would the governmental interest be affected, if at all, by extending procedural safeguards to cover the challenged

debarment. But this record is barren of evidence or findings which would support blanket attribution of Gonzalez' conduct to all appellants alike. For example, absent specific findings as to Carmen Gonzalez' knowledge of or participation in the acts of her brother, her debarment raises questions of denial of substantive due process; the record is likewise silent as to findings of corporate participation. Compare Commodity Credit Corp. v. Worthington, 263 F.2d 178 (4th Cir.), cert. denied, 359 U.S. 1012, 79 S.Ct. 1148 (1959).

18. See note 4, supra.

19. Here there was a "temporary" suspension during the period from January 13, 1960 to May 24, 1962, pending investigation. Summary action would appear warranted in some circumstances especially when procedural safeguards are accorded before a final decision is reached. Cf. R. A. Holman & Co., v. Securities and Exchange Commission, 112 U.S.App.D.C. 43, 47–49, 299 F.2d 127, 131–133, cert. denied, 370 U.S. 911, 82 S.Ct. 1257, 8 L. Ed.2d 404 (1962). See also Opp Cotton Mills v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624 (1941). How long a "temporary" suspension could be sustained would depend upon the need and other circumstances.

action?[20] The Supreme Court found severe economic injury in Greene v. McElroy, *supra*, which was probably dispositive; in the Cafeteria Workers case the injury was neither severe nor lasting.[21]

Appellants have urged that their debarment violated due process standards. Our interpretation of the Act under which appellees administer the affairs of Commodity Credit makes unnecessary our reaching these constitutional contentions. In short, we construe, the pertinent statutory scheme as authorizing debarment but as not authorizing debarment without either regulations establishing standards and a procedure which are both fair and uniform or basically fair treatment of appellants. The

scope and detail of these regulations are for the agency to resolve in the first instance. We have suggested enough on this subject to make further elaboration unnecessary.

Accordingly we remand with directions to enter summary judgment in favor of Thomas P. Gonzalez and Thos. P. Gonzalez Corporation, whose debarment was invalid because it was imposed without observance of procedural requirements and hence in excess of statutory jurisdiction and authority;[22] and to enter summary judgment in favor of Carmen Gonzalez, whose debarment was invalid for the same reasons and because arbitrary and capricious, and hence an abuse of discretion.[23]

Reversed and remanded.[24]

20. "'[F]air play' * * * cannot, therefore, be tested by mere generalities or sentiments abstractly appealing. The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment."
Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 163, 71 S.Ct. 624 (1951) (concurring opinion of Frankfurter, J.).

21. To suggest the need for procedural safeguards does not mean that the full trial-type panoply of due process is commanded in all cases. However defined or classified, the individual interest is one that is protected by concepts of fundamental fairness and by some procedure which, as we have already indicated, has the basic elements of published standards, notice, grounds, opportunity to respond and be heard and, subject only to essential national security considerations, to cross-ex-

amine those whose information is used as a basis for an adverse decision. See, *e. g.*, Exec.Order No. 10865, §§ 3, 4, 25 Fed.Reg. 1583 (1960). Where no significant security interests would be jeopardized by disclosure of sources of adverse information, it is difficult to justify withholding sources of whatever information is relied upon for the administrative decision.

22. See Administrative Procedure Act Section 10(e) (B) (3), (4), 60 STAT. 243 (1946), 5 U.S.C. § 1009(e) (B) (3), (4) (1958). See note 10, *supra*.

23. See Administrative Procedure Act Section 10(e) (B) (1), 60 STAT. 243 (1946), 5 U.S.C. § 1009(e) (B) (1) (1958). See notes 10 and 17, *supra*.

24. Although Gonzalez and Blanco, J. F. Gonzalez Company, and the American Chili Powder Company did not join as plaintiffs in the District Court and thus are not parties to this appeal, we note that if, as appears from this record, their debarment was imposed without the procedural protections outlined *supra*, the authority of this decision would invalidate any such debarment.