COMMUNITY ECONOMIC DEVELOP-
MENT CORP., INC., Plaintiff,

v.

UNITED STATES, et al., Defendants.

Civ. A. No. 83–2226.

United States District Court,
District of Columbia.

Nov. 30, 1983.

Fred Israel, Israel & Raley, Chartered, Washington, D.C., for plaintiff.

Sandra C. McFeeley, Asst. U.S. Atty., Washington, D.C., for defendants.

Lois G. Williams, Gregory O'Duden, National Treasury Employees Union, Washington, D.C., amicus curiae.

## OPINION

HAROLD H. GREENE, District Judge.

This action arises from the rejection by the General Services Administration (GSA) of an offer made by plaintiff Community Economic Development Corporation (CEDC) for the lease of office and related space in Nassau County, New York. The contracting officer at GSA determined that CEDC was a nonresponsible offeror, and awarded the lease to Selo-Weiss Joint Venture (Selo). CEDC filed suit in this Court, claiming that the contracting officer's finding of nonresponsibility was irrational, arbitrary, and capricious, and lacked any rational basis, and that it constituted a de facto debarment of CEDC from future solicitations. CEDC has moved for summary judgment, requesting that this Court find that CEDC was the low, responsible offeror, and that it order GSA to withdraw its award to Selo and award the lease to CEDC. The defendants have filed a cross-motion for summary judgment which seeks a denial of the relief sought by CEDC and a dismissal of the action. Defendants' motion for summary judgment will be granted, and that of plaintiff will be denied.

### I

On March 24, 1982, GSA issued Solicitation for Offers MNY–82–083 (Solicitation),

requesting space for use by the Internal Revenue Service in Nassau County, N.Y. Eight offers were received, with CEDC and Selo submitting the two lowest offers. By letters dated May 27, 1982, the offerors were advised to submit their best and final offers by June 11, 1982. After the submission of all such offers, Selo was erroneously determined to be the low offeror when, in fact, CEDC had submitted the low bid. The contracting officer found Selo to be both responsive to the Solicitation and responsible, and he forwarded a lease to Selo which the latter executed on November 30, 1982.

During the review process at the Office of Acquisition Policy, it was discovered that the contracting officer had made an error in determining the identity of the low offeror, and that CEDC was, the actual low offeror on the lease. GSA withheld the final approvals required to effectuate the lease with Selo while it considered CEDC's offer. On January 19, 1983, GSA requested CEDC to extend its offer, and CEDC agreed to the extension shortly thereafter. GSA then began to evaluate the CEDC offer for acceptability and to investigate CEDC's responsibility.

The contracting officer determined that the premises offered by CEDC were capable, after renovation, of meeting all the award criteria. As part of his review of CEDC's responsibility, however, he learned that CEDC had failed to pay property taxes to Nassau County for the preceding four years in an amount totalling $265,635.31, and that the county had commenced foreclosure proceedings on the premises offered by CEDC to GSA.[1]

In February or March, 1983, the contracting officer determined CEDC to be nonresponsible. GSA accordingly notified CEDC by letter of March 9, 1983, that its

offer was rejected. While there is some inconsistency as to the number and weight of the various factors on which the contracting officer's determination of nonresponsibility was based, chief among them were the unpaid property taxes and the consequent jeopardy to CEDC's title to the building. In addition, the contracting officer apparently relied upon (1) a General Accounting Office report dated August 15, 1980, which had reviewed CEDC's record with regard to business ventures it has funded, and which revealed a history of enterprises which went bankrupt, ceased operations, or experienced financial difficulties; (2) the high level of debt which would be incurred by CEDC, based upon estimated annual costs and the amount to be spent on renovation; (3) CEDC's low estimate for base cost of services in its lease offer; and (4) the low occupancy level of the building containing the offered office space.

On March 15, 1983, CEDC protested GSA's rejection of its low offer by letter to the General Accounting Office. After a conference held on July 8, 1983, the GAO issued a decision on August 23, which upheld the GSA decision.[2]

## II

■ A disappointed bidder seeking to overturn the award of a government contract to one of its competitors bears a very heavy burden of proof. In *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289 (D.C.Cir. 1971), the Court of Appeals for this Circuit articulated a policy of restrained and infrequent judicial intervention in awards of government contracts. It identified a

strong public interest in avoiding disruptions in procurement, and for withholding judicial interjection unless it clearly appears that the case calls for an asser-

1. On February 14, 1983, CEDC's attorney advised GSA that CEDC had reached an agreement with Nassau County which would avoid foreclosure. The contracting officer learned from the Deputy County Treasurer that by the terms of the agreement, CEDC would keep legal title to the building, provided that it adhered to a schedule for payment of the tax arrearage and

did not miss a single payment under the agreement. Any default in the payment schedule would trigger the foreclosure proceeding and Nassau County would take over title.

2. CEDC's protest was denied in part and dismissed in part.

tion of an overriding public interest 'in having agencies follow the regulations which control government contracting.' *Id.* at 1300 (citation omitted). The aggrieved bidder must demonstrate either that there was no rational basis for the agency's decision, or that there was a clear and prejudicial violation of the applicable statutes or regulations. *Kentron Hawaii, Inc. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir. 1973); *M. Steinthal & Co. v. Seamans, supra* at 1301, 1303.

■ Indeed, even in instances where an agency decision lacks a rational basis, "there is reason for sound judicial discretion, in the presence of overriding public interest considerations, to refuse to entertain declaratory or injunctive actions in a preprocurement context." *M. Steinthal & Co., supra* at 1301. Absent a compelling showing that a contracting official's actions were capricious or arbitrary, or that he abused his discretion, a district court may not vacate a government procurement decision.

■ Plaintiff's showing in this case is anything but compelling. CEDC's tax arrearage alone provides a rational basis for the rejection of CEDC's bid. The failure to pay taxes for four years may not unreasonably be viewed as a sign of poor business management. The fact that CEDC had worked out a payout schedule with Nassau County to satisfy its tax liability does not alter this conclusion significantly, for although foreclosure was postponed, title to the premises remained in a precarious state.

A decision on a prospective contractor's probable ability to perform involves a forecast which must of necessity be a matter of judgment. The contracting official in this instance acted well within the broad administrative discretion accorded to him [3] when he decided, in light of CEDC's circumstances, that he did not want to risk accepting a contract the offeror could not perform. The other factors—the history of business failures, the high level of debt, the low estimate for the cost of services, and the low occupancy of the building in question—further support the reasonableness of the contracting official's fears that CEDC would not be able to meet its payment schedule, and thus its obligations under a contract.

CEDC seeks to discredit the GSA decision by providing an endless litany of procedural irregularities allegedly committed by the contracting official. The list is too long to be recited or discussed in detail. It is sufficient, however, for the Court to note that many of CEDC's accusations of procedural irregularities are trivial [4] or speculative and unsubstantiated,[5] and that others may not be irregularities at all.[6] In all instances, the irregularities would not have affected GSA's finding that CEDC was nonresponsible based upon the circumstances surrounding its unpaid taxes, nor does plaintiff attempt to demonstrate such an effect. Plaintiff's claims do not rise to the level of "clear and prejudicial" violations of applicable statutes or regulations required by law. *Kentron Hawaii, supra,* 480 F.2d at 1169.

---

3. See *M. Steinthal & Co., supra* at 1301.

4. *E.g.,* CEDC complains that although GSA received CEDC's best and final offer on June 11, 1982, GSA date-stamped it three days later, on June 14, 1982.

5. *E.g.,* CEDC suggests that GSA's initial miscalculation resulting in the appearance that CEDC's was not the low offering bid was not a mathematical error but an intentional refusal to follow the proper method of calculation. CEDC also speculates that Selo's initial and best and final offers may have been submitted after the

designated closing dates, even though the documents were date-stamped as being timely.

6. *E.g.,* CEDC faults the contracting official for not obtaining further information concerning CEDC's financial capacity pursuant to federal procurement regulations, GSA internal agency guidelines, and the terms of the Solicitation. It appears, however, that once CEDC was found to be nonresponsible on the basis of its unpaid taxes, there was no need to take the next step and request evidence of plaintiff's financial capacity.

## III

Plaintiff further argues that it has suffered a de facto debarment without due process of law. See *Old Dominion Dairy v. Secretary of Defense*, 631 F.2d 953 (D.C. Cir.1980); *Gonzalez v. Freeman*, 334 F.2d 570 (D.C.Cir.1964); *Art-Metal-USA, Inc. v. Solomon*, 473 F.Supp. 1 (D.D.C.1978). This claim is based upon GSA's nonresponsibility determination with regard to this particular Solicitation, combined with statements allegedly made by the contracting officer on July 11, 1983 (shortly after CEDC filed its protest with the GAO) to the effect that CEDC has been "debarred—in my own mind." It should be noted, however, that the contracting official, by affidavit and at his deposition, denied making these statements, and that he testified at his deposition that plaintiff would be welcome to make an offer on any future procurement and would be sent solicitations as a matter of course.

In any event, whether or not the contracting officer made the statements in question, they do not demonstrate that an improper debarment took place. A reasonable determination of nonresponsibility combined with some remarks made in what was most likely a heated context do not constitute de facto debarment.[7] CEDC has presented a one-time disqualification which under the circumstances had a reasonable basis and does not constitute a denial of due process. CEDC's de facto debarment claim must fail.

## IV

It is also worthy of note that the General Accounting Office has made a determination upholding the procurement official on the merits of all the issues before this Court. That circumstance increases this Court's reluctance to interfere with GSA's procurement decisions. *M. Steinthal & Co., supra* at 1304–05. The GAO has special concern with and supervision over the competitive bidding aspect of procurement, and it has an accumulated experience and expertise regarding bid protest cases.[8]

The Court of Appeals in *M. Steinthal & Co.* described the situation in which district courts have been placed since private challenges to government contract awards were allowed in *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970), a description which all too aptly fits the events of this case:

> After the agency has reached a decision, the losing bidder has rushed into court seeking to halt the particular procurement and to obtain an immediate judicial reconsideration of the agency's determination. The court is at one and the same time confronted with a number of technical procurement statutes and regulations, contract provisions and specifications, and asked to determine expeditiously whether the procurement should proceed.

455 F.2d at 1301.

Thousands of government contracts are awarded each year, and an even greater number of offerors have their bids rejected. The district courts were never intended to become the forum for the claims of all these disappointed bidders, who propel the courts "into a tangle of complex stat-

---

7. This case is wholly unlike *Art-Metal-USA, supra*, where the defendant abruptly cancelled one contract with the plaintiff, suspended action on four others, and frankly admitted that it intended not to accept any further bids from the plaintiff.

8. Plaintiff has suggested that the GAO's review was inadequate because defendants "concealed" probative documents from the Comptroller General. These documents concern two audits performed by the Inspector General of the proposed lease with Selo. One audit was prepared in the ordinary course of business for leases over $200,000, and the other was performed at the special request of GSA's Regional Administrator. Plaintiff freely concedes that neither report reviewed or addressed the propriety of the contracting officer's determination that CEDC was nonresponsible, and that, in fact, the field work for at least one audit was conducted before the contracting officer even made the determination in question. There is therefore no reason why these documents should have been produced to the Comptroller General, and it cannot be said either that GSA "concealed" these documents or that the GAO's determination was defective.

utes and decisional rules" as they are applied to "the complicated circumstances of individual procurements." *Id.* at 1301, 1302. Instead, the courts should and do intervene in "the relatively few cases" where it appears that governmental functions have been permitted to deteriorate into actions reflecting the "whim, misplaced zeal, or impermissible influence of administrative officials." *Id.* at 1301, 1305–06. This clearly is not such a case. Plaintiff's requests for relief will therefore be denied, and summary judgment will be granted to the defendants.