(No. 51011.—

POLYVEND, INC., Appellee, v. THEODORE PUCKORIUS, Director of Administrative Services, *et al.*, Appellants.

*Opinion filed October 2, 1979.*

CLARK, J., concurring.

William J. Scott, Attorney General, of Springfield (Michael J. Hayes, Jerome J. Webb, and Robert Orman, Assistant Attorneys General, and Peter Erlinder, law student, of Chicago, of counsel), for appellants.

Foran, Wiss & Schultz, of Chicago (Richard G. Schultz and Nicholas J. Etten, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Polyvend, Inc., filed this declaratory judgment action in October 1977 following defendants' rejection of its bid to manufacture the 1979 multiyear motor vehicle license plates for the State of Illinois. Plaintiff's bid, which was the only one submitted on this project, was rejected by the State pursuant to section 10.1 of the Illinois Purchasing Act (Ill. Rev. Stat. 1977, ch. 127, par. 132.10—1), which became effective October 1, 1977. That section provides:

> "No person or business entity shall be awarded a contract or sub-contract if that person or business entity: (a) has been convicted of bribery or attempting to bribe an officer or employee of the State of Illinois in that officer or employee's official capacity; or (b) has made an admission of guilt of such conduct which is a matter of record but has not been prosecuted for such conduct.
>
> For purposes of this Section, where an official, agent, or employee of a business entity committed the bribery or attempted bribery on behalf of such an entity and pursuant to the direction or authorization of a responsible official thereof, the business entity shall be chargeable with the conduct."

Plaintiff challenged the statute on various constitutional grounds: (1) section 10.1 denies procedural due process of law; (2) the statute is unconstitutionally vague and indefinite; (3) the statute constitutes a bill of attainder; (4) it invalidly delegates legislative power to an administrative official; and (5) section 10.1 cannot be

retrospectively applied to a prior bribery conviction. The circuit court rejected these arguments and granted defendants' motion for summary judgment. The appellate court, reaching only one of the issues, reversed and remanded, finding the statute unconstitutional on due process grounds. (61 Ill. App. 3d 163.) We allowed defendants' petition for leave to appeal.

Plaintiff is an Arkansas corporation engaged in the manufacture of license plates and authorized to transact business in Illinois. Responding to an advertisement by the Illinois Department of Administrative Services for bids on the contract to manufacture the 1979 multiyear license plates, plaintiff submitted a bid in the amount of $10,390,440.40, signed by Patrick J. Stoltz as president of the plaintiff corporation. In 1974, Stoltz had pleaded guilty in Federal district court to a charge of bribery. This conviction arose out of Stoltz' activities as president of Metal Stamping Corp., the sole owner of Polyvend, and involved the bribery of an Illinois official.

In 1973, Stoltz resigned as president of the Metal Stamping Corp., and the following year Polyvend was merged into Metal Stamping Corp. The name of the corporation subsequently was changed to that of its former subsidiary, Polyvend. Despite Stoltz' resignation as president of the corporation, he apparently continued to hold a controlling interest in the firm at the time the bid was submitted. Metal Stamping Corp. was awarded the contract to manufacture the Illinois license plates in 1976 and 1977, and Polyvend was awarded the 1978 contract. Although Polyvend submitted the only bid to manufacture the 1979 plates, it was rejected by defendant pursuant to the above-quoted statutory provision. Stoltz died in December 1978.

It is fundamental that the constitutional guarantees of procedural due process only become operative where there is an actual or threatened impairment or deprivation of

"life, liberty or property." (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2.) Therefore, the starting point in any procedural due process analysis is a determination of whether one of these protectable interests is present, for if there is not, no process is due. Plaintiff argues that the opportunity to contract for the sale of goods and services to the government is a legally protected property interest within the ambit of the due process clause and, therefore, cannot be eliminated without affording the would-be supplier minimal guarantees of procedural due process. With this contention, however, we disagree.

As the United States Supreme Court recognized in *Board of Regents v. Roth* (1972), 408 U.S. 564, 570, 33 L. Ed. 2d 548, 556-57, 92 S. Ct. 2701, 2705, "the range of interests protected by procedural due process is not infinite." Following a review of the pertinent judicial decisions, the *Roth* court concluded that, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.) Stated differently, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person *has already acquired* in specific benefits." (Emphasis added.) 408 U.S. 564, 576, 33 L. Ed. 2d 548, 560, 92 S. Ct. 2701, 2708.

We do not think it can be said that plaintiff had "a legitimate claim of entitlement" to the future State contract involved herein. This conclusion is derived from an examination of relevant State law as well as the circumstances surrounding the bid itself. As the court stated in *Roth*:

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules

or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.)

(See also *Bishop v. Wood* (1976), 426 U.S. 341, 344, 48 L. Ed. 2d 684, 689-90, 96 S. Ct. 2074, 2077; *Goss v. Lopez* (1975), 419 U.S. 565, 572-73, 42 L. Ed. 2d 725, 733-34, 95 S. Ct. 729, 735.) Section 4 of the Illinois Purchasing Act (Ill. Rev. Stat. 1977, ch. 127, par. 132.4), which concerns advertisement for bids, expressly states that "[a]ny and all bids may be rejected ***." Furthermore, section 17, paragraph (h), of the Department of Administrative Services' Purchasing Rules and Regulations, issued pursuant to the Illinois Purchasing Act, provides that, if it appears to be in the best interest of the State, all bids may be rejected. Finally, both the advertisement for bids and the instructions to bidders in the instant case contained explicit language providing that the State reserved the right to reject any or all bids. Therefore, it seems clear that there was no intention to confer a "claim of entitlement" on bidders for government contracts. Absent such an interest, it cannot be said that the bidders have a recognizable property right within the meaning of the Federal or State constitutions.

Analogous to the contractor's interest in receiving future government contracts is the interest of an individual in government employment. In *Roth* an assistant professor at a State university brought an action in which he alleged that the decision of the university not to renew his teaching contract for another year violated his right to procedural due process of law. The plaintiff had been hired for a fixed term of one academic year and had no tenure rights to continued employment. The plaintiff argued that he should have been given notice of any reason for

nonretention and an opportunity for a hearing. After examining the terms of the plaintiff's employment agreement with the university, however, the United States Supreme Court concluded that while he may have had "an abstract concern in being rehired" (408 U.S. 564, 578, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2710), he did not have a claim of entitlement to reemployment. Therefore, the plaintiff lacked the requisite property interest necessary to require the university to comply with procedural due process requirements. See also *Yeley v. Bartonville Fire & Police Com.* (1979), 77 Ill. 2d 271.

Similarly, in the present case, despite the fact that plaintiff had been the successful bidder in 1976, 1977 and 1978, and had manufactured the State license plates in those years, it did not have a claim of entitlement or protectable property interest in the 1979 license plate contract. Each contract with the State was separate and independent from the other, and prior performance of a like contract did not give the contractor a preferred status or any other reasonable basis for concluding that it would receive future contracts. Polyvend's "unilateral expectation" that it would receive the contract to manufacture the 1979 Illinois motor vehicle license plates does not constitute a protectable property interest within the meaning of the due process clause. *Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 560-61, 92 S. Ct. 2701, 2709.

In *Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 84 L. Ed. 1108, 60 S. Ct. 869, the United States Supreme Court held that bidders on government contracts lack a sufficient legal interest to challenge government procurement rules and policies. Although the case was decided on principles of standing, we think the reasoning employed by the court therein is equally pertinent to the present controversy. In *Perkins,* the court stated:

"Like private individuals and businesses, the

Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." (310 U.S. 113, 127, 84 L. Ed. 1108, 1114, 60 S. Ct. 869, 876.) "Courts should not, where Congress has not done so, subject purchasing agencies of Government to the delays necessarily incident to judicial scrutiny at the instance of potential sellers, which would be contrary to traditional governmental practice and would create a new concept of judicial controversies. A like restraint applied to purchasing by private business would be widely condemned as an intolerable business handicap. It is, as both Congress and the courts have always recognized, essential to the even and expeditious functioning of Government that the administration of the purchasing machinery be unhampered." 310 U.S. 113, 130, 84 L. Ed. 1108, 1116, 60 S. Ct. 869, 878.

See also *Powell v. Jones* (1973), 56 Ill. 2d 70, 82.

The decisions which plaintiff relies on, and which the appellate court cited in support of its conclusion that plaintiff had a protectable property interest, are not persuasive. In *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, the plaintiff, a medical laboratory, was informed by the Director of the Illinois Department of Public Aid that it was going to be suspended from further participation in the Medicaid program. The plaintiff thereupon filed suit seeking to restrain the Director from taking such action. In response to the Director's contention that the plaintiff lacked standing to bring such an action because of the absence of a protectable interest, this court distinguished *Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 84 L. Ed. 1108, 60 S. Ct. 869, by pointing

out that, whereas in *Perkins* the government contractors were unable to demonstrate that a legal right had been threatened, this plaintiff did possess a protectable legal interest, "that being its expectation of continuing to receive Medicaid payments on behalf of the Medicaid recipients it services." 68 Ill. 2d 540, 547.

This right to continuing participation in an ongoing program, which was recognized as a protectable legal right by the court, arose by virtue of the fact that the plaintiff had participated in the Medicaid program for approximately eight years prior to the decision of the Director to suspend. The program was a continuing one, not requiring annual competitive bids, in direct contrast with the present case, where plaintiff was not a participant in an ongoing, continuous program. Rather, there was simply an annual invitation to bid and a resulting annual award of the license plate contract. Being awarded the contract in a given year did not give rise to any right or interest in future State contracts, which were entirely independent matters. While plaintiff may have had "an abstract concern" in being awarded the 1979 license plate contract, it certainly did not have a legally protectable property interest and, absent such an interest, a prospective government contractor's bid does not trigger due process safeguards.

Nor are we persuaded by *Gonzalez v. Freeman* (D.C. Cir. 1964), 334 F.2d 570. In *Gonzalez*, the plaintiff corporation, which had a record of contractual relations with the Commodity Credit Corporation for a number of years, was temporarily debarred from doing business with Commodity Credit. Plaintiff was not given any grounds for the five-year debarment and was not provided an opportunity for a hearing. Although the court did determine that the plaintiff was entitled to some procedural safeguards, including notice of specific charges and an opportunity to present evidence and to cross-examine adverse

witnesses, this finding was based solely upon an interpretation of the Commodity Credit Corporation Charter Act (15 U.S.C. sec. 714 (1970)) and the Administrative Procedure Act (5 U.S.C. sec. 551 *et seq.* (1970)). In fact, the court explicitly refrained from deciding the constitutional question of whether the debarment violated the plaintiff's right to due process. Consequently, *Gonzalez* is neither controlling nor persuasive here.

Section 10.1 clearly was enacted by the legislature in an effort to insure that those individuals and corporations who have demonstrated a lack of integrity in the past when dealing with the State not be permitted to transact business with the State in the future. While the statute certainly deals effectively with those individuals and businesses who have bribed or attempted to bribe State officials or employees, it cannot be said to deprive prospective government contractors of due process since those bidders have no recognized property rights in future government contracts in Illinois.

Nor do we think that this statute suffers from any of the other constitutional infirmities suggested by plaintiff. It is argued, for example, that section 10.1 is unconstitutionally vague and constitutes an invalid delegation of legislative power to an administrative official. Plaintiff specifically objects to the statutory phrases "business entity," "in that officer or employee's official capacity," "admission of guilt," "matter of record," and "direction or authorization of a responsible official."

It is clear that due process of law "requires that an act shall not be vague, indefinite or uncertain, and must provide sufficient standards to guide the administrative body in the exercise of its functions." (*People ex rel. Stamos v. Public Building Com.* (1968), 40 Ill. 2d 164, 174.) The standard which we have applied in the past in determining whether a statute is unconstitutionally vague is whether the terms of the statute are so vague that

persons of common intelligence must necessarily guess at its meaning and differ as to its application. (*People v. Palkes* (1972), 52 Ill. 2d 472, 475; *Hershey Manufacturing Co. v. Adamowski* (1961), 22 Ill. 2d 36, 43-44.) We do not believe that section 10.1 is such a statute. Although the phrases which plaintiff objects to are not defined in the statute, they seem to be commonly used and understood words. We do not think it can be said that persons of common intelligence would have to guess at the meaning of such everyday words as "business entity" or "admission of guilt."

Nor do we think that this statute invalidly delegates legislative power to an administrative official. As this court stated in *Hill v. Relyea* (1966), 34 Ill. 2d 552, 555:

"Absolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be established by the General Assembly. The constitution merely requires that intelligible standards be set to guide the agency charged with enforcement ***."

More specifically, we held in *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 372, that, in delegating its authority, the legislature must "provide sufficient identification of the following:

(1) The *persons* and *activities* potentially subject to regulation;

(2) The *harm* sought to be prevented; and

(3) The general *means* intended to be available to the administrator to prevent the identified harm."

We believe that section 10.1 clearly satisfies these requirements and, therefore, precludes the type of unbridled agency discretion feared by plaintiff.

Furthermore, we reject plaintiff's contention that section 10.1 is being applied retrospectively in violation of plaintiff's constitutional rights. Plaintiff relies upon section

4 of the Illinois statutory construction act, which provides:

> "No new law shall be construed *** in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred *** before the new law takes effect ***." (Ill. Rev. Stat. 1975, ch. 131, par. 4.)

Plaintiff argues that by refusing to award the 1979 license plate contract to Polyvend because of Stolz' 1974 conviction, the State is violating section 4 of the statutory construction act and is ignoring numerous Illinois decisions which require new statutes to apply prospectively only. We do not agree.

First of all, section 10.1 was not, in our judgment, applied retroactively to plaintiff. The Act became effective on October 1, 1977, and was applied prospectively to future procurement decisions. While the law did take cognizance of past acts, it did not affect procurement decisions occurring prior to October 1, 1977. Secondly, section 4 of the statutory construction act only protects "vested rights." (*Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 346.) As we concluded in the context of plaintiff's procedural due process argument, plaintiff does not have a vested right to future government supply contracts. Absent such an interest, plaintiff's argument that the statute violates section 4 of the statutory construction act fails.

Finally, plaintiff contends that section 10.1 is an unconstitutional bill of attainder. A bill of attainder has been defined as "a legislative act which inflicts punishment without a judicial trial." (*United States v. Lovett* (1946), 328 U.S. 303, 315, 90 L. Ed. 1252, 1259, 66 S. Ct. 1073, 1078.) We do not think that section 10.1 of the Illinois Purchasing Act can be called a bill of attainder. There clearly was a judicial determination of guilt concerning a controlling shareholder and official of the corporation when Stoltz was convicted of bribery in 1974. The

legislative act, section 10.1, simply attributed his guilt to the corporation. This is no different than any other civil or criminal provision which holds a corporation responsible for the acts of its officials. The only way a corporation can act is through its officers, directors and employees.

A similar problem was addressed by the United States Supreme Court in *De Veau v. Braisted* (1960), 363 U.S. 144, 4 L. Ed. 2d 1109, 80 S. Ct. 1146. In that case, union officials and others challenged the constitutionality of a section of the New York Waterfront Commission Act which provided that no person could solicit or receive dues on behalf of any waterfront union if an officer of such union had been convicted of a felony. As a result of the Act, the International Longshoremen's Association was denied dues solicitation and collection privileges because of an officer's conviction of a felony 36 years earlier. The court, considering the claim that the Act was unconstitutional as a bill of attainder and as an *ex post facto* law, stated:

> "Finally, section 8 of the Waterfront Commission Act is neither a bill of attainder nor an *ex post facto* law. \*\*\* Clearly, section 8 embodies no further implications of appellant's guilt than are contained in his 1920 judicial conviction; \*\*\*. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, *is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation* \*\*\*. The proof is overwhelming that New York sought not to punish ex-felons, but to devise what was felt to be a much-needed scheme of regulation of the waterfront \*\*\*." (Emphasis added.) (363 U.S. 144, 160, 4 L. Ed. 2d 1109, 1120, 80 S. Ct.

1146, 1155.)

Similarly, section 10.1 was devised as a much needed regulation of government procurement policies and cannot be said to constitute a bill of attainder.

Plaintiff's allegation that section 10.1 violates numerous other constitutional guarantees of one who is criminally accused does not merit discussion. Section 10.1 is a civil statute and plaintiff is not being accused of criminal activity.

This statute, like all others, is presumed to be a valid enactment and the burden is on the party challenging it to establish its constitutional invalidity. (*Jaris v. Public School Teachers' Pension and Retirement Fund* (1974), 58 Ill. 2d 15, 19.) In our judgment that burden has not been met. Accordingly, we hold that section 10.1 does not violate any of the constitutional guarantees asserted by plaintiff.

The judgment of the appellate court is accordingly reversed and that of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE CLARK, concurring:

I concur in the result. I do not concur in the majority's view that the *opportunity to bid* is not a protectable property interest necessitating minimal due process guarantees. The majority incorrectly characterizes plaintiff's asserted property interest here as a " 'claim of entitlement' to the future State contract involved herein" (77 Ill. 2d at 294). That is not the situation at all. Of course plaintiff is not entitled to a future State contract; but plaintiff's claimed property interest, requiring due process protection, is the *opportunity* to bid—not entitlement to have the bid accepted.

I agree that *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 546, and *Gonzalez v. Freeman*

(D.C. Cir. 1964), 334 F.2d 570, 574, are not persuasive. However, *Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 125, 84 L. Ed. 1108, 1114, 60 S. Ct. 869, 876, is also inappropriate. These three cases were all initially concerned with standing, which is not an issue here (and which encompasses a lower standard for determination). Moreover, *Bio-Medical* and *Gonzalez* both involved interruption of an existing or continuing relationship, which does not exist here (where the Illinois Department of Administrative Services (hereafter Department) *annually invites* bids to manufacture license plates and could reject any and all bids (Ill. Rev. Stat. 1977, ch. 127, par. 132.4)). Also, *Gonzalez* and *Bio-Medical* were not decided on the basis of due process.

To determine whether due process guarantees are applicable to the circumstances here, as the majority correctly points out, the first step is to establish the existence of a protectable property interest. In *Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709, the Supreme Court stated:

> "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source *such as state law*—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (Emphasis added.)

(Accord, *e.g., Perry v. Sindermann* (1972), 408 U.S. 593, 602 n.7, 33 L. Ed. 2d 570, 580 n.7, 92 S. Ct. 2694, 2700 n. 7; *Bishop v. Wood* (1976), 426 U.S. 341, 344, 48 L. Ed. 2d 684, 690, 96 S. Ct. 2074, 2077. See *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.) Analysis of both Illinois statutory and common law compels the conclusion that a right to bid, or more precisely the right to an equal opportunity to bid,

protected by due process if denied, exists. The Illinois Purchasing Act provides:

"It is the purpose of this Act and is hereby declared to be the policy of the State that the principle of competitive bidding and economical procurement practices shall be applicable to all purchases and contracts by or for any State Agency." (Ill. Rev. Stat. 1977, ch. 127, par. 132.2.)

Again, it provides:

"That all purchases, contracts and expenditure of funds shall be awarded to the lowest responsible bidder considering conformity with specifications, terms of delivery, quality and serviceability ***." (Ill. Rev. Stat. 1977, ch. 127, par. 132.6(a).)

The primary purpose of these provisions no doubt is to benefit the State; a secondary purpose, but no less important, is to permit anyone, who is responsible and qualified, to compete for a contract. (See *Dement v. Rokker* (1888), 126 Ill. 174, 194-97.) In the absence of statute, the State, of course, "could let contracts without competitive bidding." (*Inskip v. Board of Trustees* (1962), 26 Ill. 2d 501, 512; *Bohleber v. Carmi Township Hospital* (1975), 30 Ill. App. 3d 969, 974.) Once a statute provides for competitive bidding, as does the Illinois Purchasing Act here, a prospective bidder may not simply be denied the opportunity to bid. On this basis, the instant case is distinguishable from *Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 84 L. Ed. 1108, 60 S. Ct. 869, above, and distinct from the State's rights under section 4 of the Illinois Purchasing Act: "Any and all bids may be rejected ***." (Ill. Rev. Stat. 1977, ch. 127, par. 132.4.) *Perkins* held that the status of bidder does not result in an interest sufficient to challenge legitimate government regulations a prospective contractor must comply with; and section 4 does not compel the State to accept a bid. Here, however, plaintiff, or any prospective bidder, under section 10.1 of

the Illinois Purchasing Act (Ill. Rev. Stat. 1977, ch. 127, par. 132.10—1), would not even be permitted to acquire the status of bidder (*Perkins*) and would be prevented from submitting a bid (which can then be rejected). Several older cases of this court have held that the statutory requirement of competitive bidding "necessarily implies equal opportunity to and freedom in all whose interests or inclinations might thus impel them to compete at the bidding." (*Dement v. Rokker* (1888), 126 Ill. 174, 196. Accord, *Holden v. City of Alton* (1899), 179 Ill. 318, 324, and *Callaghan & Co. v. Smith* (1922), 304 Ill. 532, 540-41.) The opportunity to bid on a government contract, therefore, is a property right, protected from unfair competition and interference by the State without due process.

By implication, the State's argument that plaintiff has not been permanently debarred, or that section 10.1 does not effect such a result, is mistaken. The State asserts that the bid for only a single contract was rejected, thus implying plaintiff should try again "next year." The record establishes that *one reason* the bid was rejected was section 10.1, set out in full in the majority opinion (77 Ill. 2d at 292). Section 10.1's language is: "No person or business entity shall be awarded a contract ***." The language used is in the nature of a universal denial with no time period or limitation on such preclusion set out.

It is true, as plaintiff maintains, that section 10.1 (Ill. Rev. Stat. 1977, ch. 127, par. 132.10—1) provides for no notice and hearing or other recourse. However, a statute, constitutionally defective in this respect, may be cured by administrative regulations. (*Bell v. Burson* (1971), 402 U.S. 535, 542-43, 29 L. Ed. 2d 90, 96, 91 S. Ct. 1586, 1591; accord, *Pollion v. Lewis* (N.D. Ill. 1971), 332 F. Supp. 777, 778-79.) The Department's "Purchasing Rules and Regulations Covering Procurement of Commodities,

Equipment, Printing, Purchases from Small Businesses, and Guidelines for Procurement of Printing Paper, Stationery and Envelopes" (hereafter Rules) provides for "Rights to Appeal":

> "Any decision rendered by the Procurement Division, Department of General Services [now Department of Administrative Services] pursuant to these Purchasing Rules and Regulations may be appealed to the Director of General Services by filing with him a written statement setting forth all the facts and circumstances together with the basis for making such appeal." (Rules, pt. I, sec. 28.)

(Plaintiff did *not* pursue this appeals route.) Whether this "appeal" is sufficient for due process purposes must be subjected to analysis. Plaintiff denies the Rules' section 28 appeal is sufficient as a "hearing," denies it is adequate because it occurs subsequent to a decision of debarment, and denies it is even correctly applicable to the instant case because the decision here was pursuant, at least partially, to section 10.1 of the Illinois Purchasing Act rather than wholly pursuant to the Rules.

United States Supreme Court decisions, primarily in this decade (beginning with *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011), have shown a propensity towards requiring "some kind of hearing *** at some time before a person is finally deprived of his property interests." (*Wolff v. McDonnell* (1974), 418 U.S. 539, 557-58, 41 L. Ed. 2d 935, 952, 94 S. Ct. 2963, 2975.) What kind of hearing, its nature or the extent of its proceedings has not been clarified by that court. Indeed, the decisions, except in applying their rationales to the facts before them, have been vague, even tolerantly inconsistent—perhaps of necessity given the multitude of circumstances in which due process attaches. (*E.g.,* contrast *Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963, *Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895,

and *Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633, with *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011, *Boddie v. Connecticut* (1971), 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780, and *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893. See Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1274 (1975) (hereafter Friendly).) What the Supreme Court has consistently said is that the process due or procedural requisites for a hearing may vary according to the government function and interest involved, the private interest affected by the government action, and the nature of the proceedings; due process in one case may not be satisfactory in another. (*Wolff v. McDonnell* (1974), 418 U.S. 539, 560, 41 L. Ed. 2d 935, 953, 94 S. Ct. 2963, 2977; *Bell v. Burson* (1971), 402 U.S. 535, 540, 29 L. Ed. 2d 90, 95, 91 S. Ct. 1586, 1589; *Boddie v. Connecticut* (1971), 401 U.S. 371, 378-79, 28 L. Ed. 2d 113, 119, 91 S. Ct. 780, 786; *Goldberg v. Kelly* (1970), 397 U.S. 254, 263, 25 L. Ed. 2d 287, 296, 90 S. Ct. 1011, 1018.) Due process " 'is not a technical conception with a fixed content unrelated to time, place and circumstances' " but " 'is flexible and calls for such procedural protections as the particular situation demands.' " (*Mathews v. Eldridge* (1976), 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.) According to *Mathews,* this necessitates "consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903. See Friendly, 123 U. Pa. L. Rev., 1278; and K. Davis,

Administrative Law of the Seventies 266-68 (1976).

The private interest affected here, of course, is plaintiff's right to have the opportunity to bid. As is clear from the cases above, the importance of the right affected has a bearing on the adequacy of the hearing available. Plaintiff's right is not in the nature of a deprivation of personal or real property; nor is it a deprivation of liberty; nor is plaintiff's right to do business interfered with. (There is, of course, no "right" to State contracts (Ill. Rev. Stat. 1977, ch. 127, par. 132.4; *Gonzalez v. Freeman* (D.C. Cir. 1964), 334 F.2d 570, 574).) Plaintiff undoubtedly would not discourage anyone from perceiving its loss of the right to present a bid as a loss of a $10 million contract. However, the loss is strictly only the prevention of participation in competition (for bids), the outcome of which is uncertain. The right which plaintiff possesses then is only to compete with others for a contract. It has no expectation of receiving the contract. If the bidder is *notified* by letter, as here, that its bid is denied pursuant to section 10.1 of the Illinois Purchasing Act, the result is the loss of only that contract for that year—before a party may avail itself of section 28 of the Rules. If the Department has erred, section 28 provides the mechanism for correction. If the Department has not erred, the bidder is debarred permanently. I believe the deprivation here is much less severe than deprivation involving loss of livelihood, liberty or profession (*Goldberg, Wolff* and *Bell* respectively).

The "risk of an erroneous deprivation" (*Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903), pursuant to section 10.1 of the Illinois Purchasing Act and under the Rules' section 28 "hearing" is minimal. Supreme Court decisions in this decade do not dictate the type of hearing and extent of proceedings required. Judge Friendly of the Second Circuit United States Court of Appeals has written:

> "The term 'hearing,' like 'jurisdiction,' is 'a verbal coat of too many colors.' Professor Davis has defined it as 'any oral proceeding before a tribunal.' Broad as that definition is, it may not be broad enough. Although the term 'hearing' has an oral connotation, I see no reason why in some circumstances a 'hearing' may not be had on written materials only." (Friendly, 123 U. Pa. L. Rev. 1267, 1270.)

Section 28 is just such a circumstance, since the risk of error is not great. I appreciate the concern about the margin of error, but disagree that the margin is substantial, and note that section 28 allows for just such margin of error. First of all, the conviction or admission of guilt would be a matter of public record. Second, the Department would have access to bidding documents and corporate charters to lessen the possibility of error. Third, whatever denial of association between the corporation and guilty party and roles played by either, whatever extenuating circumstances, whatever explanation or justification a debarred bidder wishes to present to the Director could be adequately and competently done in the "written statement" permitted by the Rules' section 28. Beyond this I do not see what a hearing of the nature urged by plaintiff, or additional or substitute safeguards, would accomplish. (See *People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569, 577-78, where a statute, permitting summary disqualification for a harness racing license on the basis of pending criminal charges, was construed; the license applicant was found to be "clearly disqualified.")

I perceive the government's interest to be substantial. The State is concerned with efficiently and effectively making its purchases. Necessarily, delaying the award of a bid, pending a hearing to determine whether a bidder should be permanently debarred, makes no sense because the State must expedite the award on behalf of the public. Moreover, the State should keep public funds free from

any impropriety, even the appearance of impropriety. Additional or substitute proceedings would add administrative and financial burdens which are unwarranted and unnecessary. Application of the *Mathews* test sustains the sufficiency of the Rules' section 28 hearing or appeal.

Plaintiff also argues that the hearing is required *before* a right is permanently deprived and cites *Fuentes v. Shevin* (1972), 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983. As the circumstances exist here, I disagree. First, since a bidder's interest in getting a contract is no greater than another bidder's interest in *a given* competiton for the manufacture of one year's license plates and since the State may reject any and all bids, including the lowest bid, there is no harm in holding the Rules' section 28 appeal subsequent to the rejection of the bid. Second, as noted above, the margin of error is limited. Third, later Supreme Court cases have qualified the "requirement" of holding a hearing before the deprivation of a right. *Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 611, 40 L. Ed. 2d 406, 415, 94 S. Ct. 1895, 1902, held that a "hearing must be had before one is *finally* deprived" of a property interest (emphasis added). Postponement of an inquiry is not violative of due process where an ultimate determination will be had. (Judge Friendly's opinion in *Frost v. Weinberger* (2d Cir. 1975), 515 F.2d 57, 66-68, is essentially in accord. Accord, K. Davis, Administrative Law of the Seventies 268-72 (1976). Contra, *Mattern v. Weinberger* (3d Cir. 1975), 519 F.2d 150.) *Barry v. Barchi* (1979), 443 U.S. 55, 65, 61 L. Ed. 2d 365, 375, 99 S. Ct. 2642, 2649, noted that where a State's interest is substantial, and so long as a party's interest is not "baselessly compromised," a post-suspension hearing on the deprivation of a property interest can pass constitutional muster.

Plaintiff contends, too, that the Rules' section 28 is applicable only where the decision made by the Depart-

ment is "pursuant to these Purchasing Rules." Because here the decision to reject was, at least partially, pursuant to section 10.1 of the Illinois Purchasing Act, section 28's appeal route is unavailable, plaintiff maintains. We find that argument involves semantics at best, frivolity at worst. *All* decisions, apropos of the purchase of commodities and equipment on behalf of the State, are made pursuant to the Rules. This is clear from the statute requiring promulgation of the Rules:

> "*All* purchases, contracts or other obligation or expenditure of funds by any State agency shall be in accordance with rules and regulations governing such State agency procurement practices and procedures which it shall promulgate and publish in sufficient number for distribution to persons interested in bidding on purchases or contracts to be let by such State agency." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 127, par. 132.5.)

The rejection of a bid, even on the basis of section 10.1 of the Illinois Purchasing Act, is a decision apropos of the purchase of commodities and equipment on behalf of the State. The language of section 17 of the Rules, "Grounds for Rejection of Bids," is not exclusive (especially subsections (a) and (c)).

For these reasons I am able to concur in the result of the majority's opinion but not in the reasoning. Plaintiff had a protectable property interest (which it should not lose without benefit of due process).