POLYVEND, INC., Plaintiff-Appellee, v. THEODORE PUCKORIUS, Indiv. and as Director of the Department of Administrative Services, et al., Defendants-Appellants.

First District (5th Division)    No. 79-797

Opinion filed September 19, 1980.

William J. Scott, Attorney General, of Chicago (Michael J. Hayes and Robert McFarland, Assistant Attorneys General, of counsel), for appellants.

Foran, Wiss & Schults, of Chicago (Richard G. Schultz, Nicholas J. Etten, and Lori Stone, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff brought suit seeking a declaratory judgment that the Illinois Purchasing Act (Ill. Rev. Stat. 1977, ch. 127, par. 132.1 *et seq.*) gave it the right to bid for and be awarded the 1979-80 fiscal year Illinois license plates. After the trial court heard arguments, it entered an order granting plaintiff's motion for judgment on the pleadings and denying defendants' motion for summary judgment. On appeal, defendants contend that the court misinterpreted section 10.1 of the Illinois Purchasing Act (Ill. Rev. Stat. 1977, ch. 127, par. 132.10—1) in entering its order. We reverse.

Section 10.1, which became effective October 1, 1977, provides:

"No person or business entity shall be awarded a contract or sub-contract if that person or business entity: (a) has been convicted of bribery or attempting to bribe an officer or employee of the State of Illinois in that officer or employee's official capacity; or (b) has made an admission of guilt of such conduct which is a matter of record but has not been prosecuted for such conduct.

For purposes of this Section, where an official, agent, or employee of a business entity committed the bribery or attempted bribery on behalf of such an entity and pursuant to the direction or authorization of a responsible official thereof, the business entity shall be chargeable with the conduct." (Ill. Rev. Stat. 1977, ch. 127, par. 132.10—1.)

This section of the Illinois Purchasing Act recently has been found constitutional in another case involving the same parties as are involved in the present suit. (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 395 N.E.2d 1376, *appeal dismissed* (1980), 444 U.S. 1062, 62 L. Ed. 2d 744, 100 S. Ct. 1001 (hereafter *Polyvend I*).) Nevertheless, that case did not specifically deal with the question of whether section 10.1 prohibits the awarding of a State contract to a business entity after the death of the agent or officer whose wrongful act was the cause of the section's application. That question is the question raised in this appeal.

In March of 1974, J. Patrick Stoltz was convicted of bribing an Illinois State official while serving as both president and controlling stockholder

of Metal Stamping Corporation (hereafter Metal Stamping). At the same time, all charges against Metal Stamping were dismissed. Subsequently, Metal Stamping changed its name to plaintiff, Polyvend, Inc., which had been the name of a corporation whose stock had been wholly owned by Metal Stamping and which had recently merged with Metal Stamping. Stoltz remained a controlling stockholder of the corporation when it changed its name to plaintiff. He died on December 18, 1977, after having served his sentence for the bribery conviction. After his death, defendants invited plaintiff to bid for the contract to manufacture the 1979-1980 fiscal year Illinois license plates and the 1980 miscellaneous plates. Pursuant to this invitation, plaintiff submitted a bid which ultimately proved to be the lowest bid for the contract. Nevertheless, defendants rejected the bid on the sole ground that section 10.1 forbade the awarding of contracts to plaintiff because of Stoltz's conviction of bribery.

After defendants' rejection of the bid, plaintiff brought suit against them seeking, among other relief, a declaration that section 10.1 did not debar it from being awarded a State contract after Stoltz's death. After the trial court heard arguments, it granted plaintiff's motion for judgment on the pleadings and denied defendants' motion for summary judgment. In so doing, the court stated:

"1. Section 10—1 cannot be the basis for denying the award to Polyvend of the contracts to manufacture the 1980 miscellaneous license plates and the 1979-1980 fiscal year license plates for the State of Illinois, which contracts are the subject of Polyvend's bid dated November 29, 1978; and

2. The application of Section 10—1 to Polyvend after the death of J. Patrick Stoltz be and hereby is declared to be unconstitutional."

This appeal follows from the entry of that order.

OPINION

Defendants contend that section 10.1 continues to be applicable to a corporation after the death of the agent or officer whose wrongful act was the cause of the statute's application. They base their contention on the belief that the clear language and purpose of the section warrant such continued application to the corporation after the death of its agent. Plaintiff, on the other hand, argues that such continued application is not warranted by the language or purpose of the section and would lead to unjust and absurd consequences.

The claims of the parties raise a question as to the meaning of section 10.1 of the Illinois Purchasing Act. Over 65 years ago, the Illinois Supreme Court in *Wall v. Pfanschmidt* (1914), 265 Ill. 180, 190-91, 106 N.E. 785,

788-89, set forth the following guidelines to ascertaining the meaning of a statute:

> "If in a statute there is neither ambiguity nor room for construction the intention of the legislature must be held free from doubt. The question as to what the framers of the statute would have done had it been in their minds that a case like the one here under consideration would arise is not the point in dispute. The inquiry is as to what, in fact, they did enact, possibly without anticipating the existence of such facts. This should be determined, not by conjecture as to their meaning, but by the construction of the language used. * * * Under the rules for the interpretation of statutes the courts cannot read into a statute exceptions or limitations which depart from its plain meaning. * * * When the legislature has spoken in clear and unequivocal language the courts are bound thereby. * * * The courts have no concern with the wisdom of a statute unless it contravenes some constitutional provision."

Applying these guidelines, we find that section 10.1 permanently bars plaintiff's being awarded State contracts.

■■ The legislative intent to permanently bar a corporation, like plaintiff, from being awarded State contracts is best ascertained from the language of section 10.1. (See *Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 374 N.E.2d 211.) Section 10.1 speaks in clear and unambiguous terms, stating that "[n]o person or business entity *shall* be awarded a contract." (Emphasis added.) No limitations or exceptions have been written into this statutory provision and it is not the judicial function to read exceptions or limitations into the plain meaning of a statute. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758; *Wall v. Pfanschmidt*.) Absent any limitations or exceptions, section 10.1 must be read to permanently bar plaintiff from being awarded State contracts. Language in *Polyvend I* supports such a reading of this section. (77 Ill. 2d 287, 299, 306, 309-11, 395 N.E.2d 1376, 1381, 1384, 1386 (Clark, J., concurring.) See also the discussion of the permanent debarment features of section 10.1 in *Polyvend, Inc. v. Puckorius* (1978), 61 Ill. App. 3d 163, 167, 377 N.E.2d 1160, 1163.) Also, such a reading of this section will effectuate the legislative purpose of using this section "to insure that those individuals and corporations who have demonstrated a lack of integrity in the past when dealing with the State not be permitted to transact business with the State in the future." (77 Ill. 2d 287, 299, 395 N.E.2d 1376, 1381.) There can be no better assurance that this goal will be attained than by permanently debarring plaintiff.

■■ Plaintiff argues, however, that Stoltz was the wrongdoer and that

after his death there is no longer any reason to prevent plaintiff from being awarded State contracts. Although such an argument has some appeal, particularly in light of Stoltz's dual role of president and controlling stockholder at the time of the acts of bribery, we cannot read section 10.1 other than it is clearly written. Paragraph 2 of section 10.1 is clear in its pronouncement that the act of an individual like Stoltz is chargeable to his corporation. There is nothing unique in such an attribution of the guilt of a corporate official to his corporation. (77 Ill. 2d 287, 301-02, 395 N.E.2d 1376, 1382.) Once his act is chargeable to the corporation, his death becomes meaningless for purposes of application of section 10.1. To read section 10.1 as plaintiff suggests would require us to ignore the clear pronouncement of paragraph 2. If we were to do that, we would violate a fundamental rule of statutory interpretation: no paragraph, sentence, clause, or word should be ignored. (*Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34.) We cannot ignore the clear language of the legislature unless the language contravenes some constitutional provision. The language of this section does not.

Plaintiff also argues that a reading of permanent debarment leads to unjust and absurd consequences. We disagree. There is nothing unjust about plaintiff's permanent debarment. *Polyvend I* established the fact that plaintiff, as bidder, had no property interest in the awarding of a State contract. (77 Ill. 2d 287, 296, 395 N.E.2d 1376, 1380. See *Coyne-Delany Co. v. Capital Development Board* (7th Cir. 1980), 616 F.2d 341.) Instead, under circumstances like the present, "the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." (*Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 127, 84 L. Ed. 1108, 1114, 60 S. Ct. 869, 876. See *Alfred Engineering, Inc. v. Illinois Fair Employment Practices Com.* (1974), 19 Ill. App. 3d 592, 312 N.E.2d 61; *Coyne-Delany Co. v. Capital Development Board*; *Estey Corp. v. Matzke* (N.D. Ill. 1976), 431 F. Supp. 468; *Southern Illinois Builders Association v. Ogilvie* (S.D. Ill. 1971), 327 F. Supp. 1154; Comment, *Doing Business with Government: Are Prospective Suppliers Entitled to Procedural Due Process?* 55 Chi-Kent L. Rev. 497, 511, 514, 515 (1979).) In the present case, the legislature clearly chose not to deal with corporations like plaintiff. Absent any constitutional restriction, that decision is unreviewable by us.

There is also nothing absurd about plaintiff's permanent debarment. At a time when governmental honesty is foremost in the minds of the public, severe measures are necessary. It is not absurd for the legislature to enact statutory provisions which attempt to insure the integrity of

governmental officials and those dealing with the governmental officials. Section 10.1 is one such statutory provision. Although 200 years from now, the permanent features of the debarment might be considered harsh or absurd, we cannot say that under the present circumstances permanent debarment of plaintiff is absurd.

Reversed.

SULLIVAN, P. J., and MEJDA, J., concur.