NOTICE

Decision filed 11/18/19. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2019 IL App (5th) 190337-U

NO. 5-19-0337

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DEVELOPMENTAL DISABILITY SERVICES OF METRO EAST, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff and Counterdefendant-Appellant, | ) ) | |
| v. | ) ) | No. 19-CH-153 |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES; GRACE B. HOU, Secretary of Illinois Department of Human Services; DIVISION OF DEVELOPMENTAL DISABILITIES; KATHLEEN R. WARD, Acting Director of the Division of Developmental Disabilities; GARY KRAMER, Chief Accountability Officer of the Division of Developmental Disabilities, | ) ) ) ) ) ) ) ) ) | |
| Defendants and Counterdefendants-Appellees | ) ) | |
| (Prairieland Service Coordination, Inc., Third-Party Defendant and Counterplaintiff-Appellee). | ) ) ) | Honorable Julie K. Katz, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court properly denied the plaintiff's request for a preliminary injunction where the plaintiff failed to establish a fair question as to the existence of a clearly ascertainable right in need of protection.

1

¶ 2    The plaintiff, Developmental Disability Services of Metro East (DDSME), sought a preliminary injunction to require the defendants to maintain funding to DDSME and to prevent the defendants from entering into a contract with the third-party defendant, Prairieland Service Coordination, Inc. (Prairieland). The circuit court of St. Clair County entered an order denying DDSME's motion for preliminary injunction. For the reasons that follow, we affirm the decision of the circuit court.

¶ 3                                  BACKGROUND

¶ 4    DDSME is a nonprofit, independent service coordination (ISC) agency that provides services to individuals with developmental and intellectual disabilities. DDSME was founded in 1986 and served as the sole ISC agency in St. Clair and Madison Counties for 32 years. During this time, the State funded ISC services through a noncompetitive, annual fiscal year renewal contract process. Each year, DDSME entered into annual contracts with the Illinois Department of Human Services (DHS) and its Division of Developmental Disabilities (DDD) to provide ISC services. The final contract entered into between DDSME and DHS was for fiscal year 2019, and was effective from July 1, 2018, until June 30, 2019. The contract included a provision governing renewal, which provided that the contract may be renewed for additional periods by mutual consent of the parties but that the current contract did "not create any expectation of renewal."

¶ 5    On September 10, 2018, DHS and DDD posted a Notice of Funding Opportunity (NOFO) for ISC services for fiscal year 2020. This was the first time DHS sought to fund ISC services through a competitive bidding process. On November 12, 2018, DDSME

2

submitted a timely application to DHS and DDD for funding under the ISC NOFO for St. Clair and Madison Counties, identified as region K in the NOFO.

¶ 6     On January 2, 2019, DHS and DDD notified DDSME that it had not been selected to receive the ISC NOFO grant funding for region K for fiscal year 2020. Instead, DHS and DDD had selected another ISC provider, Prairieland, to service the region. On January 16, 2019, DDSME filed a timely appeal with DHS and DDD. On February 15, 2019, DDSME received an email from Kathleen Ward, acting director of DDD, advising DDSME that the result of the NOFO had been upheld. Attached to the email was a letter from Gary Kramer, the Chief Accountability Officer for DHS, who was also acting as an appeal review officer. In his letter, Kramer stated he agreed with the initial NOFO determination made by DHS and DDD, and that he recommended that a notice of nonselection be issued to DDSME be upheld.

¶ 7     On March 11, 2019, DDSME filed a timely petition for judicial review of DHS's final administrative decision in the St. Clair County circuit court, case number 19-MR-0067, in accordance with 735 ILCS 5/3-103 (West 2018). On March 20, 2019, DDSME filed a three-count complaint seeking a temporary restraining order and preliminary injunctive relief against DHS; DDD; Ward; Kramer; and Grace B. Hou, the Secretary of DHS. In count I, DDSME alleged that the defendants violated 2 C.F.R. § 200.101 of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (the Uniform Guidance) because the Uniform Guidance did not apply to block grants awarded under the Omnibus Budget Reconciliation Act of 1981, and some of the funding for the NOFO came from federal block grants. In count II, DDSME

3

alleged that the defendants violated the Illinois Administrative Procedure Act (the IAPA) (5 ILCS 100/5-5 *et seq*. (West 2018)), by failing to properly promulgate rules relating to the NOFO funding as required by the Grant Accountability and Transparency Act (30 ILCS 708/1 *et seq*. (West 2018)). DDSME also alleged that the defendants acted arbitrarily, capriciously, and contrary to the law in violation of the IAPA when they denied DDSME's application and that the defendants failed to provide DDSME with a fair and meaningful appeal process in violation of DDSME's due process rights. In count III, DDSME sought a temporary restraining order and a preliminary injunction ordering the defendants to maintain funding to DDSME and barring the defendants from entering into or taking action to implement any contracts pursuant to the NOFO for ISC services for fiscal year 2020 until such time as the circuit court rendered a decision in case number 19-MR-0067. In support of its request for injunctive relief, DDSME alleged it had a clearly ascertainable right "in the form of a legally protected property interest in the continuation of its funding from the State."

¶ 8    On March 20, 2019, DDSME filed a separate motion for temporary restraining order and preliminary injunction. In the motion, DDSME alleged that it was entitled to an injunction because the defendants "deprived it of a legally protected property interest in the continuation of its funding from the State." Citing the Illinois Supreme Court's decision in *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540 (1977), DDSME asserted it had an "expectation interest" based upon its mutual and ongoing financial relationship with the State, of which it could not be deprived without due process. On March 20, 2019, the circuit court denied DDSME's motion for a temporary restraining

4

order, finding DDSME failed to allege a valid basis for *ex parte* injunctive relief, and set a hearing on DDSME's request for a preliminary injunction.

¶ 9    On April 1, 2019, the defendants filed a response to DDSME's motion for preliminary injunction, arguing that DDSME failed to meet the required elements for such relief. The defendants asserted that DDSME did not have a clearly ascertainable right in need of protection because it did not have a property right in a future contract with the State. The defendants argued the Illinois Supreme Court decision in *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d 287 (1979), supported a finding that DDSME did not have a protectable property interest in obtaining a future contract. Also on April 1, 2019, the circuit court held a hearing on DDSME's request for preliminary injunction. At the hearing, the defendants argued that Prairieland should be given the right to intervene in the action because Prairieland's interests could be adversely affected by the issuance of DDSME's requested relief.[1]

¶ 10    On April 10, 2019, the circuit court entered an order finding Prairieland was a necessary party and ordered DDSME to file an amended complaint adding Prairieland as a party. On April 23, 2019, DDSME complied with circuit court's order and filed an amended complaint adding Prairieland as a third-party defendant.

¶ 11    On May 20, 2019, Prairieland filed an answer to DDSME's amended complaint, a response to DDSME's motion for preliminary injunction, and a three-count countercomplaint. In its counterclaim, Prairieland brought a claim for anticipatory breach against the defendants (count I); for tortious interference with a contract against

---

[1]Notably, the defendants did not file any pleading requesting leave to add Prairieland as a party.

DDSME (count II); and for a preliminary injunction against all counterdefendants to prevent the counterdefendants from entering into any contracts, including settlement agreements, that would negatively affect Prairieland's interest in the grant award beginning on July 1, 2019 (count III).

¶ 12 On May 31, 2019, DDSME and the defendants entered into a settlement agreement in which DHS agreed to issue a new NOFO of the ISC contract for region K for fiscal year 2020. DHS agreed to allow DDSME to continue serving as the ISC for region K until the new NOFO process was completed and a new contract was entered into by DHS and the successful NOFO applicant. In exchange, DDSME agreed to dismiss with prejudice its lawsuits against the defendants in this case and case number 19-MR-0067.

¶ 13 On June 7, 2019, DDSME filed a motion for voluntary dismissal of its claims in this case against the defendants. DDSME's motion did not indicate a reason for the dismissal or state that it had entered into the settlement agreement with the defendants. On June 17, 2019, the circuit court conducted a hearing on DDSME's motion for voluntary dismissal. At the hearing, the parties advised the court about the execution of the settlement agreement and DHS's reissuance of the NOFO for region K, subjecting the ISC contract for fiscal year 2020 to rebidding. At the conclusion of the hearing, the court took the matter under advisement.

¶ 14 On July 12, 2019, the circuit court conducted a hearing on Prairieland's countercomplaint and accompanying request for injunctive relief. At the hearing, DDSME advised the court that DDSME's motion for voluntary dismissal was made

6

pursuant to the settlement agreement. At that time, Prairieland requested that the circuit court declare the settlement agreement void.

¶ 15 On July 17, 2019, the circuit court entered an order declaring the settlement agreement between DDSME and the defendants void, and denied DDSME's request for a preliminary injunction preventing the defendants from entering into a contract with Prairieland to serve as the ISC agency for region K for fiscal year 2020. The court found DDSME was not entitled to a preliminary injunction because DDSME had failed to establish that it had a clearly ascertainable right in need of protection, a requirement for issuing injunctive relief. The court found DDSME had only a unilateral expectation that it would receive future State funding based on its annual contracts with the State and that such an expectation did not constitute a protectable property interest within the meaning of the due process clause. On August 6, 2019, DDSME filed a Rule 307(a)(1) (Ill. S. Ct. 307(a)(1) (eff. Nov. 1, 2017)) interlocutory appeal of the circuit court's denial of its request for preliminary injunctive relief.

¶ 16                                   ANALYSIS

¶ 17 The scope of a Rule 307(a) interlocutory appeal is limited. On appeal, we review only the circuit court's decision granting or denying the interlocutory relief, not the merits of the plaintiff's underlying case. *Crain v. Lucent Technologies, Inc.*, 317 Ill. App. 3d 486, 491 (2000).

¶ 18 The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of a cause. *Smith v. Department of Natural Resources*, 2015 IL App (5th) 140583, ¶ 21. It is an extraordinary remedy, applicable only in an extreme

7

emergency where serious harm would result if the injunction is not issued. *Jones v. Department of Public Aid*, 373 Ill. App. 3d 184, 192-93 (2007).

¶ 19 To establish entitlement to a preliminary injunction, the plaintiff must demonstrate: (1) a clearly ascertainable right in need of protection; (2) that they will suffer irreparable harm without the injunction; (3) an inadequate remedy at law for the injury; and (4) the likelihood of success on the merits. *Smith*, 2015 IL App (5th) 140583, ¶ 21. The party seeking the injunction does not carry the same burden of proof required to prevail on the ultimate issue and must only raise a fair question as to the existence of each element. *Jones*, 373 Ill. App. 3d at 193. The court must also balance the hardships to the parties and consider whether the benefits of granting the injunction exceed any injury to the defendant. *Scheffel Financial Services, Inc. v. Heil*, 2014 IL App (5th) 130600, ¶ 10.

¶ 20 At the preliminary injunction stage, the court should not consider contested issues of fact, nor should it decide the merits of the plaintiff's case. *Smith*, 2015 IL App (5th) 140583, ¶ 22. Generally, we review the propriety of the circuit court's ruling on a preliminary injunction for an abuse of discretion. *Smith*, 2015 IL App (5th) 140583, ¶ 22. However, where the court's ruling involves a question of law, the standard of review is *de novo*. *Smith*, 2015 IL App (5th) 140583, ¶ 23.

¶ 21 On appeal, DDSME first argues that the circuit court erred in denying its request for a preliminary injunction because it has a statutory right to an injunction based upon the defendants' alleged violation of the IAPA's formal rule-making procedures. DDSME also argues that it is entitled to injunctive relief because it has a procedural due process

right that is independent of its right to receive the ISC contract. In support of its procedural due process claim, DDSME contends that *Trainor*, 68 Ill. 2d 540, supports a finding that DDSME has a protectable property interest which, in turn, bestows DDSME with a legally-cognizable interest in the fairness of the bidding process. On appeal, DDSME points to isolated portions of its amended complaint to support its position that it raised both a statutory claim and a procedural due process claim as a basis for an injunction in the circuit court.

¶ 22 DDSME's position on appeal, however, does not conform to its position in the circuit court. DDSME's amended complaint indicates that it represented to the circuit court that DDSME was entitled to injunctive relief because it had a clearly ascertainable right "in the form of a legally protected property interest in the continuation of its funding from the State." DDSME repeated this position in its motion for a temporary restraining order and a preliminary injunction, arguing "DDSME contends that Defendants deprived it of a legally protected property interest in the continuation of its funding from the State." To the extent that DDSME argued that it was entitled to an injunction because the defendants violated the IAPA and DDSME's rights to procedural due process, these issues were raised in the context of the other elements required for a preliminary injunction and not as a right or interest in need of protection. Because DDSME failed to raise these arguments in the circuit court, they have been forfeited on appeal. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 (in general, arguments not raised in the circuit court are forfeited and cannot be raised for the first time on appeal).

9

¶ 23 To the degree that DDSME continues to maintain on appeal that it has a protectable property interest based upon its ongoing relationship with the State, we reject DDSME's argument. In the circuit court, DDSME argued that it had a protectable property interest due to its "current right to provide the services" under its contract with the State, which expired on June 30, 2019. Both in the circuit court and on appeal, DDSME relied on the Illinois Supreme Court's decision in *Trainor*, 68 Ill. 2d 540, to support its contention that it has a protectable property interest. DDSME's reliance on *Trainor*, 68 Ill. 2d 540, however, is misplaced.

¶ 24 DDSME is correct that *Trainor* involved a long-time Medicaid provider who was able to obtain a preliminary injunction preventing the State from terminating its relationship because the provider had an expectation interest in continued participation in the Medicaid program. *Trainor*, 68 Ill. 2d 540. *Trainor*, however, involved a situation where the State suspended the plaintiff's current right to participate in the Medicaid program. *Trainor*, 68 Ill. 2d at 544-45. *Trainor* is clear that it was the " '[i]nterruption of an existing relationship between the government and a contractor' " which distinguished the plaintiff in that case from those who are initially seeking government contracts. *Trainor*, 68 Ill. 2d at 547 (quoting *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C. Cir. 1964)). In finding that the *Trainor* plaintiff's expectation of continuing to receive Medicaid payments was a legal interest, the court relied on *Hathaway v. Mathews*, 546 F.2d 227, 230 (7th Cir. 1976). *Trainor*, 68 Ill. 2d at 547. Similar to the plaintiff in *Trainor*, the plaintiff in *Hathaway* successfully challenged the government's termination

10

of Medicaid payments for services she was providing under an existing contract with the government. *Hathaway*, 546 F.2d at 228, 230.

¶ 25 At the hearing before the circuit court, DDSME argued the case *sub judice* was analogous to that in *Trainor* because DDSME had a long-term, ongoing relationship with the State and, at the time it filed its complaint, it was still providing services under its contract with the State. The difference between DDSME and the providers in *Trainor* and *Hathaway*, however, is that plaintiffs in those cases were seeking to enforce their current rights under an ongoing relationship or existing contract, while in this case, DDSME was seeking to acquire rights it did not possess under its contract, which is to say, a right to funding after the expiration of its contract on June 30, 2019.

¶ 26 The circuit court was correct that DDSME's position was more analogous to the plaintiff in *Polyvend*, 77 Ill. 2d 287. In *Polyvend*, the state rejected the plaintiff's bid to manufacture license plates for the State even though the plaintiff had received the contract the previous three years. *Polyvend*, 77 Ill. 2d at 293. The plaintiff argued that the State's rejection of the plaintiff's bid based on an antibribery statute denied it procedural due process. *Polyvend*, 77 Ill. 2d at 292. Noting that procedural due process is only required when one has a protectable interest, the Illinois Supreme Court observed that a protectable property interest requires " 'more than a unilateral expectation' " but, instead, the plaintiff must have a " 'legitimate claim of entitlement.' " *Polyvend*, 77 Ill. 2d at 294 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972)). The Court concluded that the plaintiff did not have a legitimate claim of entitlement or a protectable property interest in a future State contract despite having received the contract

11

in previous years because each contract was independent from the other and a prior contractual relationship did not give the contractor a preferred status or a reasonable belief that it would receive future contracts. *Polyvend*, 77 Ill. 2d at 296. The Court concluded that the plaintiff's "unilateral expectation" that it would receive the contract to manufacture the license plates in the future did not constitute a protectable property interest within the meaning of the due process clause. *Polyvend*, 77 Ill. 2d at 296. The *Polyvend* court distinguished the *Trainor* decision as one involving a "right to continuing participation in an ongoing program" as opposed to a situation involving annual competitive bidding. *Polyvend*, 77 Ill. 2d at 298. The court specifically rejected the proposition that being awarded a State contract gave rise to a right or interest in a future State contract. *Polyvend*, 77 Ill. 2d at 298.

¶ 27    Although DDSME had worked with DHS and DDD for many years, the relationship was based on annual contracts and not upon DDSME's participation in an "ongoing program." The terms of DDSME's contract with DHS were clearly stated. The contract was an annual contract, ending on June 30, 2019, and there was no expectation of renewal. The Illinois Supreme Court's holding in *Polyvend* dictates a finding that DDSME, as a party with a State contract, does not have a protectable property interest in future State contracts.

¶ 28    Having found that DDSME failed to establish a fair question as to the existence of a clearly ascertainable right in need of protection, there is no need to address the remaining elements necessary to obtain a preliminary injunction. As a caution to the

12

parties, this ruling relates only to the denial of the preliminary injunction, and has not, in any way, analyzed the merits of DDSME's remaining claims.

¶ 29                                    CONCLUSION

¶ 30    We find the circuit court did not err in finding that DDSME had not established a fair question that it has a clearly ascertainable right in need of protection. For the foregoing reasons, we affirm the judgment of the circuit court St. Clair County.


¶ 31    Affirmed.