ALOHA, INC., d/b/a Aloha, Plaintiff-Appellant, v. THE ILLINOIS LI-QUOR CONTROL COMMISSION, Defendant-Appellee.

Fourth District No. 4—89—0277

Opinion filed December 14, 1989.

Bobella Glatz, of Chatham, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

This case comes to us on appeal from an administrative review in the circuit court for Sangamon County. The plaintiff sought review of the findings and fine imposed by the Illinois Liquor Control Commission (Commission). The circuit court affirmed the decision. We affirm in part and reverse in part.

The evidence adduced at the administrative hearing before the Commission tended to show the following. On October 27, 1987, David Copeland, an investigator for the Commission, conducted an inspection of the plaintiff's place of business, the Aloha, a bar located in Springfield, Illinois. As a result of this inspection, the plaintiff was issued a citation by the Commission for violating sections 100.160(a) and 100.290(c) of the Commission's rules and regulations. (11 Ill. Adm. Code §§100.160(a), 100.290(c) (1985).) The plaintiff was specifically cited for maintaining its business premises in an unclean and unsanitary manner.

Pursuant to the citation, a hearing was held before the Commission on April 13, 1988. Copeland testified as to his findings during the investigation the previous October. He stated he inspected the entire premises in conformity with the normal procedures of the Commission's inspectors. During the course of his inspection he found numerous bottles of alcohol contaminated by insects. The tables in the customer seating area were covered with a sticky film, the carpeting throughout the bar was soiled and discolored, there was a sour odor behind the bar, and there were bugs in the racks of bottles located behind the bar. Copeland testified he confiscated 14 bottles of liquor that appeared to be contaminated with insects. These bottles had not

been tested or examined by a chemist but were admitted in evidence at the hearing.

Copeland further testified that in the walk-in cooler he had discovered numerous containers soiled with mold or mildew growth and observed mildew growth on the interior wall, ceilings, and fixtures of the cooler. On the shelves inside the cooler he noted decayed food items and items contaminated by a fuzzy, gray mold or soil located next to alcoholic beverage containers. He also stated he saw open food containers, some of which contained food which appeared to be spoiled.

In the dry storage area located next to the walk-in cooler, Copeland testified the ice machine did not have a lid to protect the ice cubes for drinks and the machine was very dirty and appeared to have mold or some substance hanging inside the machine. Copeland also noted a refrigerator in the room which had the appearance of being extremely dirty. The co-owner, Mrs. Blalock, informed Copeland the items inside the refrigerator were her personal food items and not for public consumption.

Upon inspecting the bathrooms, Copeland found nothing out of the ordinary in the women's bathroom. He stated that the men's bathroom, however, stank of urine, the floor was sticky, and that half a roll of clearly used toilet paper was in evidence. He also found approximately a bushel and a half of used toilet paper stored under the sink.

One of the co-owners of the plaintiff, Mrs. Blalock, testified on behalf of the plaintiff. She admitted the Aloha Room did in fact have a problem with insects. She stated she had hired an exterminating service to work on the problem, but their efforts had not been successful at the time of the inspection. She stated that at the time of her testimony, the problem had been solved. Blalock testified that prior to the inspection, she had not put caps on the bottles. After a subsequent visit by the Illinois Department of Public Health, she began to cap all the bottles. Blalock acknowledged that bugs were plainly visible in the confiscated bottles and stated she had not seen the bugs until Copeland brought it to her attention during his inspection. She testified the cleaning crew probably would have noticed the bugs in the bottles and would have removed the bottles before the bar opened for business the night of the inspection.

Richard Lowe, an inspector for the Illinois Department of Public Health, was the final witness called to testify. He has stated that he had conducted an inspection of the Aloha Room on October 30, 1987. He testified that he had received a complaint from a customer and a

telephone call from Copeland requesting an inspection of plaintiff's place of business. The complaint from the customer reported the presence of cockroaches and rats and a cockroach in the customer's drink.

Lowe testified he conducted his inspection with both Copeland and Blalock present. His inspection revealed two bottles contaminated with insects, and glassware contaminated with lipstick, food particles, and grease smears. He also stated the plaintiff did not have a test kit for the sanitation solution used in cleaning the glassware and the cloths for wiping the glassware were not stored in a sanitizing solution. He also noted the dirty conditions in the bathroom and the walk-in refrigerator.

On May 4, 1988, the Commission entered an order imposing a fine in the amount of $2,000 against the plaintiff. The plaintiff filed a petition for reconsideration, which was denied. On August 5, 1988, a complaint for administrative review was filed in the circuit court of Sangamon County. On January 19, 1989, the circuit court issued its order upholding the decision of the Commission. After the plaintiff's motion for reconsideration was denied on April 3, 1989, the plaintiff filed a notice of appeal on April 4, 1989.

■■ ■ The plaintiff first argues that Rule 100.160(a) violates its due process rights as it is unconstitutionally vague. The rule states:

> "All licensees must conduct their business in premises which are at all times kept clean and sanitary. This applies not only to licensed premises, but to places of storage as well. This includes also the place of storage for materials and equipment used in the manufacture of alcoholic liquor." 11 Ill. Adm. Code §100.160(a), at 1276 (1985).

The plaintiff has cited numerous Federal and State cases concerning the standards for evaluating unconstitutionally vague statutes. In *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 395 N.E.2d 1376, the Illinois Supreme Court stated that due process of law required that an act shall not be vague, indefinite, or uncertain and must provide sufficient standards to guide the administrative body in the exercise of its functions. The test to determine vagueness employed by the court in that case is whether the terms of the statute are so vague that persons of common intelligence must necessarily guess at its meaning and may differ as to its application. The plaintiff here contends the statute is vague because the term "clean and sanitary" is not defined in the statute or in the Commission rules, and plaintiff argues this exposes it to the arbitrary whims of the defendant's inspectors.

In *Polyvend*, the court wrote:

"Although the phrases which plaintiff objects to are not defined in the statute, they seem to be commonly used and understood words. We do not think it can be said that persons of common intelligence would have to guess at the meaning of such everyday words as 'business entity' or 'admission of guilt.' " (*Polyvend*, 77 Ill. 2d at 300, 395 N.E.2d at 1381.)

The term "clean and sanitary" is not so unusual or vague that it would cause persons of common intelligence to guess at its meaning or to differ as to its application. Certainly this term is no more difficult to comprehend, nor any more vague, than the phrases "business entity" or "admission of guilt" contained in the statute upheld by the court in *Polyvend.*

■ The plaintiff further argues the statutory requirement that the standard of clean and sanitary be met "at all times" is an unreasonable one which no bar operator could expect to fulfill. The plaintiff proposes the hypothetical case where a drink is spilled by a customer immediately prior to the arrival of the inspector or where the wastebasket in a washroom is full to the point of spilling over. Every statute or administrative rule relies on the good sense and discretion of the officers charged with its enforcement to prevent abuse and absurd or harsh results. Here, the evidence showed the conditions found by the inspector were not merely the happenstance of the moment, but an ongoing problem. Mrs. Blalock testified that she had been experiencing insect problems for several months. Clearly most of the mold and filth problems were not the result of a single night's activity. The plaintiff undermines the credibility of its own witnesses when it attempts to suggest these conditions were somehow miraculously transformed by a cleaning crew every evening before opening to the public. The conditions revealed by the evidence here are at the other end of the spectrum from the innocuous situations proposed in plaintiff's hypotheticals. Given these facts, the Commission's application of the statutory standards was reasonable.

■ The plaintiff next argues the Commission's finding of a violation of section 100.290(c) of its rules is contrary to the manifest weight of the evidence. That section states in part:

"No retail licensee will offer for sale, or possess on said licensed premises:

\* \* \*

(c) Any bottles, casks, or other containers containing alcoholic liquor which contain any deleterious, contaminated, filthy, putrid substance or insects." 11 Ill. Adm. Code §100.290(c), at 1279 (1985).

The plaintiff contends the bottles admitted in evidence were not tested and could not be used to show a violation of section 100.290(c). Plaintiff looks to section 100.300, which authorizes agents of the Commission to remove suspected contaminated liquor. (11 Ill. Adm. Code §100.300 (1985).) As plaintiff would have it, this section authorizes removal only for purposes of testing. Though it did not argue the liquor here had been improperly removed or admitted into evidence, the plaintiff still wishes to convey some hint of impropriety in the Commission's actions where it did not conduct chemical analysis of the seized liquor.

We do not agree that section 100.300 authorizes removal only for purposes of testing. When read as a whole, this section provides for the removal of any container suspected of containing adulterated liquor and the removal of sealed containers for the purposes of comparison testing. The testing language in the rule relates only to sealed containers. Here, the seized bottles were all open. The insect contaminants were plainly visible to the naked eye and were displayed to the Commission at its hearing. Section 100.290(c) provides that the mere presence of insects is a violation. In the absence of a statutory requirement, we fail to see what testing would have added here. Plaintiff has neither suggested what additional tests were necessary nor argued the contaminants in the bottles were not roaches and gnats. The decision of the Commission here was clearly supported by the manifest weight of the evidence.

We do, however, find merit in the plaintiff's argument that the fine imposed by the Commission exceeded its statutory authority. Section 3—12 of the Liquor Control Act of 1934 limits the fine imposed by the Commission to $500 per violation. Ill. Rev. Stat. 1985, ch. 43, par. 108.

■ The Commission here charged the plaintiff with a violation of section 100.160 and section 100.290 on October 27, 1987. The Commission argues each of the contaminated bottles constituted a separate violation of section 100.290. In the alternative, it argues there was evidence to show a continuing violation for three days after the initial inspection. We do not reach these arguments in making our decision. Administrative proceedings are governed by requirements of due process. (*Sullivan v. Board of Fire & Police Commissioners* (1988), 170 Ill. App. 3d 255, 524 N.E.2d 733.) In an administrative hearing, due process is satisfied by procedures that conform to the fundamental principles of justice. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 530 N.E.2d 682.) Procedural due process includes notice of what claims will be

presented at the hearing and what consequences will result. *In re Estate of Levin* (1985), 135 Ill. App. 3d 866, 482 N.E.2d 409.

Our review of the charges filed and the finding of the Commission reveal the plaintiff was reasonably informed that it was charged with two violations of the Commission's rules, which occurred on October 27, 1987. Nothing informed it the Commission would seek fines for a violation continuing after that day. Nothing suggested it was charged with multiple violations of section 100.290. The Commission is limited to fining the plaintiff for those charges on which the plaintiff had reasonable notice. The statutory limitation on the Commission's fines is $500 per violation, and we find the plaintiff had adequate notice of only two violations. For this reason, the decision of the circuit court is reversed as to the fine imposed and this cause is remanded with instructions for the circuit court to remand to the Commission to reduce the fine to $1,000. Its decision in all other respects is affirmed.

Affirmed in part; reversed and remanded with instructions.

SPITZ and STEIGMANN, JJ., concur.