**STATE of Minnesota, Respondent,**

v.

**Theora REHA, Appellant.**

**No. CX–90–2372.**

Court of Appeals of Minnesota.

Aug. 13, 1991.

Review Granted Oct. 7, 1991.

Hubert H. Humphrey, III Atty. Gen., St. Paul, Robert J. Alfton, Minneapolis City Atty. Office of the City Atty., Minneapolis, William J. Korn, Asst. City Atty., Minneapolis, for respondent.

Stan Nathanson, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and LANSING and DAVIES, JJ.

## OPINION

LANSING, Judge.

Theora Reha challenges the constitutionality of Minneapolis, Minn., Code of Ordinances § 244.690 (1985), which requires occupants to keep their dwellings in "clean and sanitary condition". Because the ordinance is unconstitutionally vague as applied to Reha, we reverse her conviction.

## FACTS

Following a Minneapolis Health Department inspection of her home, Theora Reha was charged with violating Minneapolis, Minn., Code of Ordinances § 244.690, which

requires dwellings to be kept in "a clean and sanitary condition." At trial, a Minneapolis Health Department inspector testified that in November 1989 she received a complaint "about a lot of clutter inside" Reha's house. Arriving at the house, the inspector noticed "severe clutter" in the yard, "clutter up to four feet" on the front porch, boxes and clothing on the back porch, and "more clutter" in the back yard. After Reha refused to allow entry to her home, the inspector obtained a search warrant and, with a police officer and two other Health Department employees, returned to make an inspection and to take photographs.

When asked on cross-examination to identify specifically what in the photographs constituted unclean and unsanitary conditions, the inspector named the following: five plastic garbage bags on the back porch, although she did not open the bags to examine the contents; a barrel on the back porch; clothing on a clothes line in the back yard; clothes; boxes stacked against a wall, although the contents of the boxes were unknown; a bag of garbage; used plastic pop bottles; a glue bottle; two barrels of clothes; ground-in dirt on the walls; a food wrapper; clutter on the stairs; an apple cider bottle that "looked and smelled of urine;" an empty milk carton; papers; a bowl containing uneaten food; and an empty cereal box.

The inspector's supervisor, an environmental control officer, testified that Reha's home contained "garbage, rubbish, empty food containers, clothing, and food lying about the house." Although he did not closely examine the contents of the plastic bags and boxes because he "didn't want to bring the roaches home," the officer concluded that some of the clothing contained roach and mice droppings.

Reha denied that her home was unclean or unsanitary. She acknowledged that her house was "disorganized" but attributed it to on-going interior and exterior renovations. She also explained that although her only income is social security disability payments, she tries to help others by collecting old clothes, mending and washing them, and donating them to charitable organizations. This process involves hanging clothes on the line to dry, packing them in plastic bags, and storing the bags on the back porch until they can be donated to the appropriate charity.

Reha accounted for most of photographic evidence: the boxes stacked against the wall contained books and dishes packed away for safe-keeping until her home is fully renovated; the piles of clothes were in the process of being sorted, washed, and packed; a bag of "garbage" contained unused urinary pads that an incontinence problem requires her to keep nearby; the plastic bottles were being saved to use as individual green houses for her tomato plants; uneaten food may have been present because inspections occurred during mealtime; the bottle on the stairs contained apple cider, not urine.

The testimony of Reha's 19–year–old daughter was consistent with her mother's. She identified piles of clothes that were being sorted and laundered and empty plastic bottles saved for putting over plants. She agreed that the bottle on the stairs contained apple cider, and identified an object in the toilet as something that had fallen from a shelf due to the remodeling, not feces.

A jury found Reha guilty, and the trial court sentenced her to 35 days or a $700 fine. Reha appeals, challenging the constitutionality of the ordinance and arguing that the prosecutor committed prejudicial error during closing arguments.

## ISSUES

1. Is ordinance 244.690 unconstitutionally broad because it infringes on the right of free expression?

2. Is ordinance 244.690 unconstitutionally vague as applied to Reha's conduct?

## ANALYSIS

Minneapolis, Minn., Code of Ordinances § 244.690 (1990) provides:

**Cleanliness.** Every occupant of a dwelling or dwelling unit shall keep in a clean and sanitary condition that part of the

dwelling unit, and premises thereof which he occupies or controls.

Neither ordinance 244.690 nor any part of the housing chapter defines "clean" or "sanitary." Without adequate definition, Reha argues, these terms are unconstitutionally vague and overbroad.

■ In a facial challenge to the overbreadth and vagueness of an ordinance, a court must first determine whether the ordinance "reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). If it does not, the overbreadth challenge must fail, and, unless the ordinance is vague as applied to Reha's actual conduct, the vagueness challenge also must fail. *See id.* at 494–95, 102 S.Ct. at 1191.

■ Freedom of expression through housekeeping is not one of the "core" first amendment freedoms that the overbreadth and vagueness doctrines serve to protect. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 168, 92 S.Ct. 1965, 1969, 32 L.Ed.2d 627 (1972). Although the fourth and fourteenth amendments extend special safeguards to the privacy of the home, *see United States v. Orito*, 413 U.S. 139, 142, 93 S.Ct. 2674, 2677, 37 L.Ed.2d 513 (1973), there is no general right to privacy that protects all activities in one's home or that proscribes reasonable, constitutionally valid government entry into one's home. Because ordinance 244.690 does not reach constitutionally protected conduct, Reha's overbreadth argument must fail. *See City of Clarksville v. Moore*, 688 S.W.2d 428, 430 (Tenn.1985) (refusing to apply overbreadth doctrine to city ordinance requiring occupants to keep their property "clean" and to remove all "abandoned items" including "weeds, dead trees, trash, garbage, etc.").

■ Reha's vagueness challenge may nonetheless succeed if she shows that the ordinance is impermissibly vague as applied "to [her] own behavior and not as to some hypothetical situation." *See State v. Kager*, 382 N.W.2d 287, 289 (Minn.App.), *pet. for rev. denied* (Minn. Apr. 24, 1986). The ordinance is unconstitutionally vague as applied to Reha's conduct if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *See State v. Newstrom*, 371 N.W.2d 525, 528 (Minn.1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). The degree of certainty required depends on the nature of an offense and whether it is susceptible of precise statement. *State v. Simmons*, 280 Minn. 107, 112 n. 4, 158 N.W.2d 209, 212 n. 4 (1968). Ordinances imposing criminal penalties require a higher standard of certainty. *Newstrom*, 371 N.W.2d at 528.

The term "clean and sanitary" is so vague and discretionary in its application to Reha's conduct that it violates minimum standards of due process. *See e.g., Sokolov v. Incorporated Village of Freeport*, 82 Misc.2d 1087, 372 N.Y.S.2d 304, 307 (1975) (language "clean, safe, in sanitary condition, in repair" in village housing code is unconstitutionally vague). "Clean and "sanitary" is not defined in the housing chapter; it is not a term of art with established meanings; and it has "no settled usage or tradition of interpretation in law." *See Gentile v. State Bar of Nevada*, —— U.S. ——, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (finding that "general" and "elaboration" are vague); *see also Newstrom*, 371 N.W.2d at 528 (holding that "essentially equivalent" is unconstitutionally vague).

The structure of the housing chapter suggests that "clean and sanitary" encompasses more than the absence of garbage and control of vermin, which are addressed in other sections of chapter 244.[1] Charg-

---

1. These sections provide:
    *Disposal of Garbage.* Every occupant of a dwelling or dwelling unit shall dispose of his rubbish in a clean and sanitary manner by placing it in the rubbish disposal facilities or if such facilities are not available by removing all nonburnable matter and securely wrapping said rubbish and placing it in tight rubbish storage containers ...

ing Reha under section 244.690 is an attempt to regulate conduct other than failure to properly dispose of garbage or to control vermin, but precisely what other conduct is proscribed is not clear.

"Clean" and "sanitary" are elastic adjectives susceptible of different meanings in different contexts. For instance, most reasonable people could agree on an acceptable standard of "clean and sanitary" for purposes of regulating retail or commercial premises. See, e.g., Aloha, Inc. v. Liquor Control Comm'n, 191 Ill.App.3d 523, 138 Ill.Dec. 886, 548 N.E.2d 116, 119 (1989) (term "clean and sanitary" in administrative rule regulating liquor establishments was not unconstitutionally vague).

In the context of housekeeping, however, "clean and sanitary" is a highly variable and subjective standard, as shown by the testimony of the housing inspector and the environmental control officer. According to the inspector, compliance with section 244.690 requires that "things" be removed from Reha's yard, floors, and countertops and that

> [a]ll means of egress need to be accessible, so she needs to be able to walk to her doors and her windows and be able to open them. She should have surfaces that are cleanable, so clutter would have to be removed in order to clean those surfaces.

In contrast, the environmental control officer testified that "clean and sanitary" means "[t]hat we can see the floor and there are not vermin present. That seems to be the standard of the community."

The fact that two Health Department employees differ in interpreting "clean and sanitary condition" demonstrates that both principles underlying the requirement of definiteness—that ordinary people can understand and avoid the proscribed conduct and that explicit standards limit enforcement discretion—are violated by ordinance 244.690.

■ Reha could not reasonably determine what conduct was required or prohibited because the ordinance provides no objective standard against which she could measure the cleanliness and sanitariness of her home. See City of Edina v. Dreher, 454 N.W.2d 621, 623 (Minn.App.1990) (as applied, an ordinance prohibiting the keeping of an animal that "disturb[s] the peace and quiet of any person in the vicinity" was unconstitutionally vague). Instead, Reha was forced to guess whether she might violate an inspector's personal standard of "clean and sanitary" by failing to dispose of trash, or hanging out clean laundry, or blocking a doorway, or having cluttered countertops, or having "things" on the floor. Because the ordinance fails to put Reha on notice of what conduct is prohibited, it violates minimal standards of due process. See Grayned v. City of Rockford, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

Furthermore, because Health Department employees apply varying, subjective standards of "clean and sanitary," ordinance 244.690 invites arbitrary and discriminatory enforcement. See Dreher, 454 N.W.2d at 623. The ordinance "affords no guidance to enforcement officials limiting their discretion in determining whether certain conduct is allowed or prohibited." Newstrom, 371 N.W.2d at 528.

This is not an instance where greater specificity in the ordinance is impractical. See Thompson v. City of Minneapolis, 300 N.W.2d 763, 769 (Minn.1980). The residual vagueness in ordinance 244.690, as applied to Reha, could easily be remedied by precisely describing the proscribed conduct or by clearly defining "clean and sanitary" in the chapter's definitions section, which already defines terms such as "garbage," "infestation," and "extermination." See Minneapolis, Minn., Code of Ordinances § 244.40 (1985). Although we hold that the ordinance is unconstitutional only as ap-

Minneapolis, Minn., Code of Ordinances § 244.710.

*Extermination of Pests.* The occupant or occupants of a dwelling containing a single dwelling unit shall be responsible for the extermina-

tion of any insects, rodents, vermin or other pests therein or on the premises.
Minneapolis, Minn., Code of Ordinances § 244.730.

plied, not on its face, we encourage the city to adopt a clear standard for measuring the cleanliness and sanitariness of residential dwellings.[2]

## DECISION

As applied to Reha's conduct, Minneapolis, Minn., Code of Ordinances § 244.690 is unconstitutionally vague.

Reversed.

2. For purposes of regulating food-related industries, the city defines "clean" and "sanitize" as follows:

clean shall mean the absence of dirt, grease, filth, rubbish, garbage, insects, vermin and other unsightly, offensive or other extraneous matter.

\*     \*     \*     \*     \*     \*

sanitize means effective bactericidal treatment effective in destroying microorganisms, including pathogens.

Minneapolis, Minn., Code of Ordinances § 188.10 (1985).